SEAFIRE INCORPORATED, Plaintiff, *v.* H. WARD ACKERSON et al., Defendants.

Supreme Court, Special Term, Suffolk County, November 26, 1947.

*Charles E. Lapp, Jr., Kenneth W. Greenawalt* and *William S. Pettit* for plaintiff.

*Guy O. Walser* for H. Ward Ackerson and others, defendants.

*Edgar F. Hazelton* and *David I. Glickman* for Suffolk County and another, defendant.

SWEZEY, J. This action is brought to set aside two tax deeds affecting premises owned by the plaintiff on Fire Island Beach, Suffolk County, New York. One deed is the result of the tax sale held for the unpaid taxes of 1935–36, and the other is the result of the tax sale held for unpaid taxes for the last half of 1940–41.

The sale for the unpaid taxes of 1935–36 will first be considered. Plaintiff claims that this tax sale is defective for several reasons, one of which is as follows: " That the 1935–1936 assessment roll, the notice of sale, the certificate and the tax deed described and indexed plaintiff's property under the amended Map of Atlantique, of which it was not a part. The failure to accurately describe the premises renders the tax and the sale thereunder void, and does not divest the owner's title."

In the deed to plaintiff's predecessor in title the premises are described as follows: " ALL that plot or tract of land known as lot number Eight (8) upon a map filed in the office of the Clerk of Suffolk County in the State of New York, by the Commissioners in partition appointed by order of the Supreme Court in an action between Samuel W. Green and others plaintiffs and David S. Sammis and others defendants said parcel being bounded and described as follows, All that certain parcel of land situate in the town of Islip County of Suffolk and State of New York, on what is now known as Fire Island Beach, Beginning at the Southwest corner thereof adjoining the Atlantic Ocean and Southeast corner of plot number Seven (7) laid out to William S. Biggs; thence running by said plot Number Seven (7) North Eleven degrees, twenty five minutes (11°25′) West and a line of stakes to the Great South Bay; thence Eastwardly along and by said Bay to plot number Nine (9) laid out

to George Benson and distant from the Easterly line of said plot number Seven (7) Nine hundred (900) feet, measured on a line drawn at right angles therefrom, thence by said plot number Nine (9) South Eleven degrees, twenty five minutes (11°25′) East and a line of stakes ·to the aforesaid Ocean; thence Westwardly by said Ocean, to the place of beginning. Being the same premises known as Lot No. 8 on Fire Island Beach in the town of Islip Suffolk County New York shown on Map entitled ' Map of Partition of the Great South Beach in the towns of Brookhaven and Islip L. I. 1878 made by Jonathan Sammis Surveyor ' filed in the office of Clerk of Suffolk County under file No. 310.''

On January 27, 1939, application was made to the County Treasurer for '' the amount of unpaid taxes outstanding against Lots 8 and 9 containing 21 acres on Fire Island known as Atlantique, owned by Seafire Incorporated, previously assessed to South Beach Development Co. (recently consolidated with Seafire Incorporated). We believe the property is located in School District #14.'' Under date of February 9, 1939, the County Treasurer replied as follows: '' Enclosed please find 1937–38, 1938–39 bills and 1936–37 redemption statement recovering 21 acres at Fire Island assessed to Eugene V. Brewster, bounded North by Bay, East by Atlantique, South by Ocean, West by Raven, showing the amounts necessary to redeem same from Suffolk County. We are unable to locate this property under the name given prior to 1936–37.''

The 1935–36 tax roll is no longer in existence, it having been destroyed under the provisions of section 3 of chapter 105 of the Laws of 1920. However, the original copy used by the assessor as his working copy for the subsequent year was admitted into evidence. There the property is described as follows:

'' Name of Tract — Amended Map of Atlantique. Map 241 Filed October 12, 1915. School District #14. Name of Locality Beach — Gt. So. Beach Co.

'' This property is bounded on the north by Gt. So. Bay, on the east by Sands, on the south by Atlantic Ocean, on the west by Loneleyville — Lots 8, Map of Gt. So. Beach Development Co. Atlantique consists of about 21 acres and is assessed to Eugene V. Brewster, 175 Duffield St., Brooklyn, except that portion assessed to individual owners.''

In the certificate on sale of land for taxes of the year 1935–36, the premises are described as follows:

'' The following lots in the subdivided tract called Amended Map of Atlantique as per map 241 filed in the office of the clerk of Suffolk County.

" Land, bounded north by Great South Bay, east by Sands, south by Atlantic Ocean, west by Loneleyville, Lot 8, Map of Great South Beach Dev. Co., except that portion Assessed to individual Owners 21 Acres.''

The tax sale notice and the notice to redeem are substantially the same. The description in the tax deed is somewhat different in that the boundaries and acreage are first given and then follow the words: '' in the subdivided tract designated as Amended Map of Atlantique, Map #231.''

The question here is: Is this description such that the property is capable of being identified and located as being owned by the plaintiff? Section 1 of the Suffolk County Tax Act (L. 1920, ch. 311) provides in part as follows: '' The assessment rolls to be prepared by the boards of assessors of the towns of Suffolk county shall provide for the separate description of each distinct parcel of land * * *.'' This seems to be the only requirement relative to description on assessment rolls in Suffolk County.

Here we have a large parcel of land consisting of twenty-one acres, assessed since 1935–36 in the described portion of the assessment roll, where it properly belongs. For the year in question, 1935–36, it was assessed in the subdivided portion of the assessment roll. Not only is it thus assessed in the wrong portion of the assessment roll, but when so assessed, it is described as a part of Amended Map of Atlantique, of which it does not form a part. The County Treasurer upon application for taxes unpaid against this property was unable to locate it prior to 1936–37.

This case is not unlike the case of *Tallman* v. *White* (2 N. Y. 66). There the property instead of being placed under the appropriate head of Syracuse Village, was placed under the head of the Village of Lodi. The court said in part (pp. 71–72): '' A landowner exercising ordinary diligence in searching the volume of advertisements to ascertain whether his lands are to be sold for taxes or are to be redeemed after sale, looks under the appropriate head, that is to say, under the name of the tract or place where his lands lie, and not elsewhere. He might, therefore, be misled and deceived by such a mistake as was made in this case; because for land lying in the village of Syracuse he would look under that head and not under the head of Lodi Village. If instead of looking at the advertisements, the owner in the present case had addressed a note to the comptroller's office enquiring whether block No. 29, in the village of Syracuse was returned for unpaid taxes and liable to be sold, he would

undoubtedly have received an answer in the negative, because the lot in question would not be found returned and entered in its proper place.''

The same reasoning may be applied here. The owner in looking over the tax sale notice would naturally look in the described portion thereof and not in the subdivided portion. In the cited case attention is called to what might have happened if application had been made for tax bill. Here it actually did happen. I am of the opinion that this indicates beyond question that the premises were so described on the assessment roll, tax certificate, notice of tax sale, notice to redeem and in the tax deed so as to be insufficiently definite to convey to the owner that it was its property that was being assessed and sold.

Plaintiff claims the tax sale of its property for nonpayment of the last half of the 1940–41 taxes is defective on numerous grounds, one of which is as follows: '' The failure of the receiver of taxes to publish and post notices required by Section 22 of the Suffolk County Tax Act rendered the tax sales void and plaintiff's title was not divested.'' Section 22 of the Suffolk County Tax Act provided as follows: '' Each receiver of taxes shall, within one week after the receipt of the tax and assessment roll and warrant, publish in such newspapers printed or circulated in the town or elsewhere as the town board shall designate, a notice of the receipt of such tax and assessment roll and warrant and that the taxes and assessments therein may be paid to the receiver at the times and with penalty as herein provided, and of the dates and places other than his principal office when and where he will attend for the receipt of taxes and assessments, and shall cause copies of said notice to be posted conspicuously in each election district of the town.'' (As amd. by L. 1931, ch. 187, eff. March 30, 1931.)

It is not disputed that the town board of the township in which plaintiff's property is located failed to designate any newspapers in which the notice was to be published. No legal notice was published although it is true that news items calling attention to the fact that the receiver had received the warrant and was ready to receive taxes did appear in two newspapers published in the town. There is proof of posting of notices but a failure to show posting in each election district of the town. The question is whether or not such publication and posting was a sufficient compliance with the statute. In *Matter of Smith* (52 N. Y. 526) where the law required publication in newspapers '' to be designated from time to time by the mayor and comptroller of said city '' and the publication was not so had, PECKHAM, J.,

said (pp. 529–530): "The legislature had obviously deemed that the interests of property owners required these publications; hence they are ordered. It is idle to say that the publications have been made as required by law, where they have not been published in the particular papers which the law designates. A publication in a specified paper, printed in italics, may operate as a good notice, if the law requires it to be so printed, as, if the lot owner knows where to look for it, and if he cannot read the language himself he may easily find someone who can. But a publication in half of the numerous papers of the city not designated by law for that purpose would practically operate as no notice, because the law not requiring the publication in these, the lot owner would never think of looking there for the notice."

In *Matter of Burmeister* (76 N. Y. 174) Chief Judge CHURCH in writing for a unanimous court said in part at page 177: "The object of requiring publication is to give notice to taxpayers of proceedings which may affect their interests. It is a substantial requirement and should not be frittered away. If papers are designated by some officer or body the citizen knows where to look for these proceedings, but if it is left to the discretion of some subordinate all the beneficial purposes of publication might be defeated, and it would be as well to say that if no designation were made, no publication need be made. This court held *In re Smith* (52 N. Y., 526), that if there were no corporation papers, no proceedings could be instituted, and that the publication according to the statute was a condition precedent to any right of the common council to act. The same decision was made *In re Levy* (63 N. Y., 637), in which this court adopted the opinion of BRADY, J., reported in 4 Hun, 501. These decisions are authoritative that if there are no corporation papers, the common council cannot act."

From the foregoing this court is of the opinion that there must be a strict compliance with the applicable statutory law. Accordingly it must here be held that the publication and posting had was not a substantial compliance with the provision of section 22 of the Suffolk County Tax Act. Does this failure to properly publish and post the notice render the tax sale and deed herein void? The determination of this question depends upon whether this provision is mandatory or merely directory.

In *French* v. *Edwards* (13 Wall. [U. S.] 506, 511) the court said: "But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory

but mandatory. They must be followed or the acts done will be invalid. The power of the officer in all such cases is limited by the manner and conditions prescribed for its exercise." (See, also, *Lyon* v. *Alley,* 130 U. S. 177, 185.)

It can hardly be said that the notice provided for here is not for the protection of the taxpayer. That the provision is mandatory is indicated by section 63 of the Suffolk County Tax Act (as added by L. 1929, ch. 152), wherein it is provided: " Any action or proceedings commenced by any person or persons to test the validity or regularity of any tax levied or assessment made shall be commenced within two years *from the first publication of the notice* that town receiver of taxes has received the warrant from the board of supervisors and that such tax is ready for collection, *as provided by section twenty-two of this act.*" (Italics supplied.)

In the case of *Jackson ex dem. Cook* v. *Shepard* (7 Cow. 88) the court nonsuited a plaintiff, holding his tax title invalid for failure to establish that the taxing official had complied with the statutory requirements as to advertising and posting. This case relied on the law as enunciated by Chief Justice MARSHALL in *Williams* v. *Peyton* (4 Wheat. [U. S.] 77) in which case Mr. Chief Justice MARSHALL said (p. 79): " As the collector has no general authority to sell lands at his discretion for the non-payment of the direct tax, but a special power to sell in the particular cases described in the act, those cases must exist, or his power does not arise. It is a naked power, not coupled with an interest; and in all such cases, the law requires *that every pre-requisite to the exercise of that power must precede its exercise;* that the agent must pursue the power, or his act will not be sustained by it." (Italics supplied.)

In this respect Cooley on Taxation (Vol. 2, 3d ed., pp. 912–913) has said: " Tax sales are made exclusively under a statutory power. The power which the state confers to assess and levy taxes does not of itself include a power to sell lands in enforcing collection, but the power to sell must be expressly given. The officer who makes the sale sells something he does not own, and which he can have no authority to sell except as he is made the agent of the law for the purpose. But he is made such agent only by certain steps which are to precede his action, and which, under the law, are conditions to his authority. If these fail the power is never created. If one of them fails it is as fatal as if all failed. Defects in the conditions to a statutory authority cannot be aided by the courts; if they have not been observed the courts cannot dispense with them, and

thus bring into existence a power which the statute only permits when the conditions have been fully complied with. * * *
It is therefore accepted as an axiom, when tax sales are under consideration, that a fundamental condition to their validity is that there should have been a substantial compliance with the law in all the proceedings of which the sale was the culmination. This would be the general rule in all cases in which a man is to be divested of his freehold by adversary proceedings; but special reasons make it peculiarly applicable to the case of tax sales.''

In the case at bar the receiver of taxes is not clothed with the power to sell, but in the event of nonpayment returns the tax unpaid, which if not later paid, will result in the sale of the property by the County Treasurer. The act of the receiver is a necessary link in the chain without which the County Treasurer could not sell for the unpaid tax.

The case of *People* v. *Turner* (117 N. Y. 227) clearly indicates the necessity for a compliance with the applicable statutory provisions.

There the question was whether failure of the assessors to give notice of a review of the assessment or to hold a meeting for that purpose as required by the statute rendered that tax void. The question also arose whether such omission was cured by chapter 448 of the Laws of 1885 which was in the nature of a curative act.

Attention was called at pages 237, 238 and 239 to the fact that: '' Section 5, chapter 176 of the Laws of 1851, provides that in case of the neglect of the assessors to meet for review, as required by the statute, any person aggrieved by an assessment may appeal to the board of supervisors at their next annual meeting, who shall have power to review and correct such assessment. The consequences of an omission by the assessors to hold the meeting are thus expressly declared, and would seem to deprive such omission of any other effect than that given to it by this statute. Ample opportunity is thereby given the taxpayer, if he feels aggrieved in respect to assessments of his property, to be heard before the board of supervisors, who are vested with full power to afford all and any relief which was possessed by the assessors. * * * It would have been competent for the legislature, while authorizing the imposition of taxes, to have omitted altogether the provisions requiring notice and a meeting by the assessors to review assessments, and to have provided only for a hearing before the supervisors in the first instance.''

Thus it is apparent that although the law provided for a hearing and review by the assessors which was not had, yet, because the law also provided an opportunity for the taxpayer to appear before the board of supervisors, etc., his rights in respect to a hearing on the subject were satisfied. It would therefore seem that the omission to have the hearing and review was relatively of small import. Nevertheless the court said at pages 234–235: "It may be conceded that, in the absence of a curative act, an omission by the assessors to hold meetings for the review of their assessments, and to give notice therefor as required by statute, is a jurisdictional defect which, in a proceeding between the owner and any one claiming a right in such property under a tax sale, renders such sale irregular and void. (*Jewell* v. *Van Steenburgh*, 58 N. Y. 86; *Van Rensselaer* v. *Witbeck*, 7 N. Y. 517; *Westfall* v. *Preston*, 49 N. Y. 349; *Wheeler* v. *Mills*, 40 Barb. 644.)"

Reference to the cases cited indicates that the reason for so holding is, that the holding of the hearing by the assessors is one of the steps by which jurisdiction is acquired to assess the property. In the instant case the advertising and posting by the receiver of taxes is one of the steps by which jurisdiction is obtained to sell the property in the event the tax is unpaid.

There we have a defect, namely, the failure to hold the hearing and review, which might well be said because of the fact that a further opportunity to be heard, was provided by the then existing law, was of little or no legal import, nevertheless without the curative act the defect was considered to be jurisdictional and to render the sale void.

Here, we are dealing with the notice to the taxpayer to come at an appointed time and pay his taxes at a specified place. Certainly it is just as important to know where and when the taxes must be paid as to know where and when to object to the amount of the assessment. The Legislature has provided how and when the notice shall be given. A noncompliance with the statutory requirements in my opinion was a violation of a requirement which was mandatory, hence jurisdictional. In this respect it is argued that the "plaintiff is in no position to urge any procedural defects in the application of the tax statutes because it had actual notice with respect to the levy of the second half of the 1940–1941 taxes and that such taxes were due and payable". Such notice is not notice or knowledge that the notice had not been published and posted in accordance with the statute. Plaintiff could only be barred from asserting this defect by estoppel or waiver. In my opinion estoppel does not apply.

" To constitute it [estoppel] the person sought to be estopped must do some act or make some admission with an intention of influencing the conduct of another, or that he had reason to believe would influence his conduct, and which act or admission is inconsistent with the claim he proposes now to make. The other party, too, must have acted upon the strength of such admission or conduct." (Matter in brackets supplied. *New York Rubber Co.* v. *Rothery,* 107 N. Y. 310, 316.)

There is no proof that when plaintiff paid the first half of the 1940–41 taxes that it knew that the notice required to be published and posted by section 22 of the Suffolk County Tax Act had not been so published and posted.

" Waiver is usually a matter of intention as indicated by the language or conduct, and knowledge, actual or constructive, of the existence of the right or condition alleged to have been waived is an essential prerequisite to its relinquishment." (*Matter of City of Rochester,* 208 N. Y. 188, 197.)

Defendant Ackerson also urges that the plaintiff " has affirmed the validity of the tax deeds in suit " in that it is seeking damages from this defendant. He claims that " if the plaintiff presses its claim in fraud (based on agency) it affirms the validity of the tax deeds, and all arguments as to alleged defects therein must be disregarded. If the plaintiff presses its claim with respect to the validity of the deeds, it waives its claim for damages in fraud (based on agency) and having thus eliminated its supposed agent eliminates itself ". This might have been so prior to the enactment of section 112-e of the Civil Practice Act. That it is no longer so is quite apparent from a reading of the present provisions of that section itself. (See, also, *Fitzgerald* v. *Title Guar. & Trust Co.,* 290 N. Y. 376, 379–380.)

The answer of the defendants Milton L. Burns, County Treasurer of Suffolk County, and Suffolk County contains a separate defense wherein it is alleged that the first and second causes of action are barred because they did not accrue within five years before the commencement of the action. This has to do with section 132 of the Tax Law.

It has been held that in order to start the running of the statute there must be an actual entry by the holder of the tax title or a recordation of the tax deed. (*Peterson* v. *Martino,* 210 N. Y. 412, 420.) Here there has been no entry and the deeds were recorded in the year 1944. Thus the statute has not run, hence plaintiff's action is not barred. I am therefore of the opinion that the tax sales of plaintiff's property for

unpaid taxes of 1935–36 and for the last half of 1940–41 and the deeds given pursuant thereto, are null and void and of no effect.

Having held that both of the tax sales are invalid and void it is unnecessary to discuss the other questions raised by the parties.

This action seeks judgment declaring the tax deeds to Ackerson invalid and void and canceling of record the tax certificates and tax deeds and in the event that the property cannot be restored to the plaintiff, plaintiff demands money damages. The result of this decision will be to restore the property to the plaintiff, thus the question of fraud and damages does not require consideration.

Submit judgment on notice in accordance herewith.