Conway, Cb. J.
In 1934, plaintiff, as tenant, entered into possession of a 135-acre farm in tbe town of Greenville, Greene County, New York, under a lease with one Marilla Whitbeck, *46 landlord, at a yearly rental of $150. Plaintiff remained in possession under the lease until about 1948, when the landlord and he entered into an agreement whereby plaintiff could purchase the farm for the sum of $4,000 and, upon the payment of that sum in full, would receive a deed. Plaintiff, thereupon, made and completed such payment, and, in 1952, received a deed from Mrs. Whitbeck, which was recorded in Greene County the same year. Pursuant to the lease and agreement to purchase, plaintiff was to pay the taxes. He paid the taxes for 1948, but failed to pay any taxes thereafter. Because of plaintiff’s failure to pay the 1949 taxes, defendant, Amity Estates, Inc., hereinafter referred to as “ Amity ”, purchased the farm at a tax sale on April 23, 1951 for the sum of $230.21. Amity thereafter received a tax deed from the County Treasurer, dated August 5, 1952, and a certificate of nonredemption, dated April 26, 1954, both of which instruments were recorded in the office of the County Clerk of Greene County on April 30, 1954.
It was not until April of 1954 that plaintiff learned for the first time that his farm had been sold for taxes and that Amity held a tax deed to the premises. Plaintiff obtained that knowledge from an insurance broker who, at the request of Amity, visited the farm to inspect it with reference to prospective insurance. On April 29, 1954 plaintiff visited and inquired of the County Attorney and the County Treasurer as to his right, if any, to redeem the property. He was advised at that time that he was entitled to redeem. On the next day, however, plaintiff received a letter from the County Attorney which indicated that plaintiff had been given incorrect information and that under the Tax Law he did not have the right to redeem the property. Thereafter, on May 11, 1954, plaintiff received a letter from Amity’s attorney, who was also an officer and director of Amity, hereinafter referred to simply as “Amity’s representative,” in which Amity’s representative stated that he wished to afford plaintiff the opportunity to voluntarily vacate the premises. In a postscript, Amity’s representative said: “ It may be that you would wish to remain in occupancy under a rental arrangement. If so, let me know.” Plaintiff did not reply to the above communication from Amity.
After receiving such communication, plaintiff inquired of two lawyers in Catskill as to his status. The first lawyer told the *47 plaintiff that it was out of his line and the second lawyer, after communicating with the County Treasurer’s office, told the plaintiff that he could not do anything for him. On May 15,1954 Amity’s representative visited the plaintiff at his farm. Amity’s representative, at that time, inspected the premises, and inquired whether plaintiff had consulted anyone regarding his alleged ownership of the farm. Plaintiff replied that he had consulted counsel of his own choosing and was under the belief that he no longer had any title or interest in the farm. Plaintiff asked Amity’s representative if he could buy the farm from Amity. When plaintiff stated that he did not have the requested sum of $400 for a down payment, Amity’s representative said that there was no sense in talking about a sale. Plaintiff stated that it would be a hardship to surrender the farm, to which Amity’s representative countered that he would not be ousted if some fair, businesslike arrangement could be made. Plaintiff asked how much the rental would be, and Amity’s representative replied that he would take up that matter when he returned to the city. After that meeting with Amity’s representative, plaintiff received a letter from such representative, dated May 27, 1954, which stated, in essence, that the monthly rental would be $100. Amity took out fire and liability insurance some time during May, 1954, and paid the premiums of $85.46 therefor. Plaintiff paid Amity $100 rental for June and $100 rental for July. Thereafter, plaintiff commenced this action seeking to have the tax deed, which was received by Amity, set aside as void.
The theory of plaintiff’s action is that the tax collector failed to comply substantially with section 69 of the Tax Law, and that such noncompliance, being a jurisdictional defect, rendered the subsequent tax sale void. The pertinent portion of section 69 of the Tax Law, entitled “Notice by collector; general”, provides: “ Every collector, upon receiving a tax-roll and warrant, shall forthwith cause notice of the reception thereof to be posted in five conspicuous places in the tax district, specifying one or more convenient places in such tax district, where he will attend from nine o’clock in the forenoon until four o’clock in the afternoon, at least three days * * * in each week for thirty days from the date of the notice * * * which days shall be specified in such notice, for the purpose of receiving the taxes assessed upon such roll. The collector shall attend accordingly, and any *48 person may pay his taxes to snch collector at the time and place so designated, or at any other time or place. # # # ” (Emphasis added.)
Under section 131 of the Tax Law, such tax conveyance of Amity “ shall be presumptive evidence that the sale and all proceedings prior thereto, from and including the assessment of lands sold, and that all notices required by law to be given previous to the expiration of the time allowed by law for the redemption thereof, were regular and in accordance with all the provisions of law relating thereto.” Thus, in this action by plaintiff, wherein is sought a declaration that the tax deed is void and that it be set aside, Amity was entitled to rely on the above-described presumption of regularity. However, as stated in Bunner v. Eastman (50 Barb. 639)If it is only presumptive evidence of regularity, then that presumption may be overcome, and the only effect of the statute [precursor of present § 131] is to shift the burden of proof from the party claiming under the deed, to the other party who seeks to overthrow it.” And, as we said in People ex rel. Wallington Apts. v. Miller (288 N. Y. 31, 33): “ Such a presumption [that of regularity of proceeding conducted by sworn tax officers] is not evidence but serves in place of evidence until the opposing party comes forward with his proof, whereat it disappears. It has no weight as evidence and is never to be considered in weighing evidence.” (See, also, Wellisch v. John Hancock Mut. Life Ins. Co., 293 N. Y. 178, 184.) Upon the trial of the present case, plaintiff sought to and, in our opinion, did overthrow such presumption of regularity. Thus, plaintiff elicited from the tax collector himself evidence of the following noncompliance with the provisions of section 69: (1) The notice under that section must specify that the collector will attend to receive the taxes from 9 o’clock in the forenoon until 4 o’clock in the afternoon; the notice herein did not specify any particular hours. (2) The notice under section 69 must specify that the collector will attend to receive taxes on at least 3 days in each week for 30 days (this amounts to at least 12 different days); the notice herein specified only 6 different days. (3) Section 69 requires posting of the notice in 5 conspicuous places; the collector posted in only one place, and, as he testified, “ The postmaster, John Ives, I guess posted [the others] ”. It is true that the tax collector testified on cross-examination that when he went to the places designated as those where taxes might *49 be paid, he saw the notices then posted. That, of course, does not establish that such notices were posted “ forthwith ” as required.
"What we must determine is whether this noncompliance rendered the tax deed void.
In approaching that question we bear in mind the principle which is so well stated in Cooley on Taxation (2d ed. [1886], p. 470): “ Tax sales are made exclusively under a statutory power. * * * The officer who makes the sale sells something he does not own, and which he can have no authority to sell except as he is made the agent of the law for the purpose. But he is made such agent only by certain steps which are to precede his action, and which, under the law, are conditions to his authority. If these fail the power is never created. If one of them fails it is as fatal as if all failed. Defects in the conditions to a statutory authority cannot be aided by the courts; if they have not been observed the courts cannot dispense with them, and thus bring into existence a power which the statute only permits when the conditions have been fully complied with. * * * It is therefore accepted as an axiom when tax sales are under consideration, that a fundamental condition to their validity is that there should have been a substantial compliance with the law in all the proceedings of which the sale was the culmination. This would be the general rule in all cases in which a man is to be divested of his freehold by adversary proceedings; but special reasons make it peculiarly applicable to the case of tax sales.” (See, also, Lockwood v. Gehlert, 127 N. Y. 241, 248; Neber v. Hatch, 10 Abb. N. C. 431, affd. on opinion below 88 N. Y. 657; Saranac Land & Timber Co. v. Roberts, 208 N. Y. 288, 311; Helterline v. People, 295 N. Y. 245, 251; McKinney’s Consol. Laws of N. Y., Book 1, Statutes, § 313, pp. 356-357).
"When we measure what was actually done in the present case by the requirements of section 69 of the Tax Law, we are forced to the conclusion that there was not a substantial compliance with the statute. The requirements of section 69 are not merely directory. That section provides: “ Every collector * * * shall forthwith cause notice * * * to be posted * * * which days shall be specified in such notice * * *. The collector shall attend accordingly * * (Italics supplied.) The word “ shall ” is one of mandate. "Without question, the statute was enacted for the benefit of the taxpayer. The Legislature has commanded that the collector provide the requisite *50 notice and, in its wisdom, lias described the specific procedure which must be employed. We cannot dispense with that which the Legislature has deemed necessary. If we were permitted to dispense with even one requirement of section 69, we would be able to excuse compliance with the statute in toto.
The failure on the part of the tax collector to substantially comply with the mandatory requirements of section 69 pertaining to notice is a jurisdictional defect (see Olds v. City of Jamestown, 280 N. Y. 281, 285; Seafire, Inc., v. Ackerson, 193 Misc. 965, affd. 275 App. Div. 717, affd. 302 N. Y. 668).
Plaintiff does not claim that the collector failed to comply with the provisions of section 69-a of the Tax Law to the effect that ‘ ‘ The collector shall immediately after the receipt of a tax-roll and warrant mail to each owner of real property included in such tax-roll * * * a statement of the amount of taxes assessed against his property with a notice of the dates and places fixed by him for receiving taxes, together with the name, address and post office address of such collector. * * * ” We may thus assume that the collector mailed the “ statement of taxes ” to plaintiff pursuant to section 69-a of the Tax Law and that the plaintiff received such statement. However, actual notice by the taxpayer does not excuse the tax collector’s noncompliance with the notice requirements of section 69 of the Tax Law (see Seafire, Inc., v. Ackerson, supra). If we were to countenance the lack of substantial compliance with section 69, merely because the taxpayer received actual notice by mail under section 69-a, we would, in effect, render section 69 of no effect and useless. A mere showing of compliance with section 69-a would excuse compliance in toto with section 69. Under a parity of reasoning, if “ actual notice ” be deemed the key, so long as it could be shown that the taxpayer received actual notice of taxes by any means, we could dispense with the collector’s compliance with both section 69-a and section 69. This, of course, may not be. The Legislature has prescribed the type of notice to which the taxpayer is entitled before his property may be declared forfeit for nonpayment of taxes. It is not for the courts to announce that some other type of notice will suffice to accomplish that purpose.
In holding that Amity had a valid tax title, the Appellate Division, citing section 137 of the Tax Law, declared that since more than three years had elapsed from the date of the tax sale to the *51 date of the commencement of this action without redemption, the time for redemption had expired, the title of Amity had become absolute and the presumption of regularity of procedure preliminary to the sale had become conclusive. That presupposes first that plaintiff is seeking to redeem and second that the proceedings for the assessment and collection of the tax and for advertisement and sale of the premises were conducted substantially in accordance with the provisions of the Tax Law, for statutes which limit the time for redemption after tax sales are not applicable where the tax sale is void because of the jurisdictional defect of failure to give the notice required by law (see Olds v. City of Jamestown, 280 N. Y. 281, 285, supra; Callahan v. Underwood, 260 App. Div. 352, affd. 285 N. Y. 620). Plaintiff is not seeking to redeem but is seeking to cancel a void deed. Nor is the present action barred by the two-year time limitation prescribed by sections 131 and 132 of the Tax Law, which bar actions to cancel deeds stemming from jurisdictional defects as well as from mere irregularities (Meigs v. Roberts, 162 N. Y. 371), since that time limitation begins to run from the date of recording (see Bryan v. McGurk, 200 N. Y. 332). The tax deed in our case was recorded on April 30,1954. Plaintiff commenced the present action in September of 1954, well within the two-year period.
Amity contends, in substance, that even if jurisdictional defects be deemed to have existed, plaintiff, by virtue of his having-become the tenant of Amity, caused an “ accord ” to be effected, “ waived ” such jurisdictional defects, and is “ estopped ” from now asserting any claim of title to the subject premises.
It is conceded that a landlord-tenant relationship was created, that the tenant (plaintiff) was to pay the sum of $100 per month as rental to the landlord (Amity), and that the plaintiff paid such rent for two months, after which time he commenced the present action. However, that does not establish an accord, a waiver or an estoppel in favor of Amity.
An accord is ‘ ‘ An agreement whereby one party undertakes to give or perform, and the other to accept in settlement of an existing or matured claim something other than what he believes himself entitled to * * * (Reilly v. Barrett, 220 N. Y. 170, 172-173.) However, as this court stated in Kromer v. Heim (75 N. Y. 574, 577): “The doctrine which has sometimes been asserted that mutual promises which give a right of action may operate and are good, as an accord and satisfaction of a prior *52 obligation, must, in this State, be taken with the qualification that the intent was to accept the new promise, as a satisfaction of the prior obligation.” (Emphasis added.) Here, there is no evidence in the record from which an intent to substitute or satisfy any claim of plaintiff can be gleaned. In fact, the contrary appears. Plaintiff, at the time when the rental arrangement was, made, asserted no adverse claim to Amity which could possibly have been the subject of a compromise; and Amity, in dealing with plaintiff at that time, so recognized the position of plaintiff. Hence, the contention of Amity that an accord was effected herein is untenable.
A waiver is “ the intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it ”. (Whitney on Contracts [4th ed., 1946], p. 273.) In the present case no waiver was effected because the plaintiff had no knowledge of the right he is charged with having knowingly and intentionally relinquished. There is no evidence in the record which indicates that plaintiff, at the time when the rental arrangement was made with Amity, knew that the tax collector had failed to comply with the “ posting of notice ” requirements of section 69 of the Tax Law, and that he thus had the right to have Amity’s tax deed cancelled. Amity, however, points to certain testimony of plaintiff, which, it claims, indicates that he had the requisite knowledge. Thus, plaintiff, in response to a question on direct examination by his own counsel, testified as follows: “ Q. Now, I would like to go back to that time in December of 1949, and ask you if you recall seeing any notices posted in the Town of Greenville? A. I don’t remember ever seeing any posters.” That testimony is of no aid to Amity. That plaintiff did not see any posted notices does not mean that he knew that such notices had not in fact been posted. Furthermore, he could not possibly have known that the contents of the notices were defective for the simple reason that, as he testified, he never saw a posted notice. Hence, on the basis of the above response, plaintiff cannot be said to have known that there had not been compliance with section 69 of the Tax Law. Should plaintiff be charged with such knowledge ? Clearly not. Under no system of jurisprudence may a person (plaintiff here) be arbitrarily charged with knowledge that a law (Tax Law, § 69) has been violated by a third person (tax collector).
*53 To constitute estoppel, “ * * * the person sought to be estopped must do some act or make some admission with an intention of influencing the conduct of another * * # and which act or admission is inconsistent with the claim he proposes now to make. The other party, too, must have acted upon the strength of such admission or conduct.” (New York Rubber Co. v. Rothery, 107 N. Y. 310, 316.) The present record is devoid of any facts upon which an estoppel may be predicated.
The initial offer for a rental arrangement was made by Amity, not by the plaintiff. In Amity’s letter, dated May 11, 1954, to plaintiff, which was the first contact had between the parties, Amity’s representative, in effect, stated: We hold a tax deed to your property. If you do not vacate voluntarily, my instructions are to proceed against you. However, if you wish to remain in possession under a rental arrangement, let me know. When plaintiff did nothing with respect to the above ultimatum, a further afSrmative step was taken by Amity on or about May 15, 1954 when Amity’s representative personally visited the plaintiff at his farm. At that time, a possible rental arrangement was discussed and, except for the amount of rental, an agreement was apparently reached. Thereafter, Amity again assumed the role of actor when, by its letter to plaintiff, dated May 27, 1954, a rental of $100 per month was offered to plaintiff. Thus, on the basis of the foregoing, it would appear that Amity was the instigator of, and active participant in, the negotiations which culminated in the relationship described. Plaintiff was passive throughout. Accordingly, it cannot be argued that plaintiff performed any act upon which Amity can be said to have, in fact, relied or changed a position.
There is one further matter to be considered. In its pleadings, Amity interposed a counterclaim against its codefendants (the County Treasurer of Greene County, Greene County itself, and the Board of Supervisors of Greene County). The theory of such counterclaim was that in the event Amity’s tax deed should be declared void, it should be reimbursed for all payments made and expenses incurred in connection with the tax sale. Since Amity was the successful party in the trial court and in the Appellate Division, it was unnecessary for those courts to consider that phase of the case. In view of our determination of reversal herein, the matter should be remitted to the Supreme Court of Greene County, in order to enable *54 that court to pass on this claim of Amity for reimbursement and, if so entitled, the extent thereof.
As prayed for in plaintiff’s complaint, the tax deed to Amity should be declared void, such deed should be surrendered by Amity to the County Treasurer for cancellation and should be adjudged to be cancelled of record, the certificate of sale (dated April 23, 1951) should be cancelled and adjudged to be can-celled of record, and all the defendants herein should be adjudged to have no interest in the premises here concerned.
The judgment of the Appellate Division and that of the Supreme Court should be reversed, with costs to plaintiff in all courts, and the matter remitted to the Supreme Court for further proceedings in accordance with the opinion herein.