HAZEL YONEKURA KLINGER and WALTER H. KLINGER, Plaintiffs-Appellees, *v.* LOUIS KEPANO, SR., and HENRY MAHI, Defendants-Appellants, and JANE DOE MAHI, JOHN DOES 1 THROUGH 10, and JANE DOES 1 THROUGH 10, Defendants

NO. 6714

CIVIL NO. 3938

NOVEMBER 5, 1981

RICHARDSON, C.J., OGATA, MENOR, LUM AND NAKAMURA, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

This appeal addresses the constitutional adequacy of notice of property tax lien foreclosure sales given pursuant to RLH §§ 128-39 and -41 (1955) (current version at HRS §§ 246-56, -58 (1976)).[1] The trial court held, *inter alia,* that a tax deed issued to plaintiffs-appellees' predecessors-in-interest subsequent to such a sale was not invalid for want of procedural due process. We reverse.

I.

At issue herein is the right to possession of a 7.58-acre parcel of land located at Haleohiu, District of North Kona, County of Hawaii.

The original patentee of the land under a land patent grant was one John S. Aipia. Aipia died intestate; his estate was not administered, nor has there been a proceeding to determine his heirs. Since

---

[1] § 128-39. All real property on which a lien for taxes exists may be sold by way of foreclosure without suit by the tax collector, and in case any lien, or any part thereof, has existed thereon for three years, shall be sold by the tax collector at public action [sic] to the highest bidder, for cash, to satisfy the lien, together with all interest, penalties, costs and expenses due or incurred on account of the tax, lien and sale, the surplus, if any, to be rendered to the person thereto entitled. The sale shall be held at any public place proper for sales on execution, after notice published at least once a week for at least four successive weeks immediately prior thereto in any newspaper of general circulation published in the taxation division wherein the property to be sold is situate, or, if there be no newspaper published in such taxation division, then in any newspaper of general circulation. The notice shall also be posted for a like period in at least three conspicuous public places within such taxation division, and if the land is improved one of the three postings shall be on the land.

§ 128-41. The notice of sale shall contain the names of the person assessed, the names of the present owners (so far as shown by the records of the tax office and the records, if any, in the office of the assistant registrar of the land court) the character and amount of the tax, and the tax year or years, with interest, penalties, costs, expenses and charges accrued or to accrue to the date appointed for the sale, a brief description of the property to be sold, and the time and place of sale, and shall warn the persons assessed, and all persons having or claiming to have any mortgage or other lien thereon or any legal or equitable right, title or other interest in the property, that unless the tax, with all interest, penalties, costs, expenses and charges accrued to the date of payment, is paid before the time of sale appointed, the property advertised for sale will be sold as advertised. The tax collector may include in one advertisement of notice of sale notice of foreclosure upon more than one parcel of real property, whether or not owned by the same person and whether or not the liens are for the same tax year or years.

his death, the owner of the land has been listed on the tax records relevant to this action as "Estate of John C. Aipia."[2]

Various of Aipia's issue, including Louis Kepano, Sr., a grandson and defendant-appellant in this action, lived on the land from Aipia's death until 1957, when Kepano moved to Honolulu. The property was vacant until 1965, when Kepano's son, Ronald, began using it on weekends. In 1968, Kepano moved back onto the land full time along with, among others, Henry Mahi, his son-in-law and fellow defendant-appellant. Thus, Aipia and his issue have been in continuous possession of the land from the date of the original grant through the present, with the exception of the 1957-65 interval.

Territory, later State, of Hawaii real property taxes were assessed against the property throughout the period relevant to this action. Department of Taxation records entitled "Delinquent Real Property Taxes Receivable" indicate the following:

(1) On December 31, 1946, delinquent taxes of $21.43 had accrued for years 1945 and prior. Further delinquent taxes of $2.67 and $2.68 accrued for years 1946 and 1947, respectively. The delinquency along with penalties and interest had increased to $45.02 by September 27, 1949, when it was paid in full. Throughout this period, the name and address of the assessee was listed as follows:

John C. Aipia Estate (Holualoa)
c/o Mary Ann Lindsey[3]
c/o Puuwaawaa Ranch
Holualoa;

(2) a similar pattern occurred for years 1951-55: delinquent taxes accrued along with penalties and interest until the full amount was paid on July 27, 1956. The name and address of the assessee remained the same; and

(3) delinquent taxes accrued from July 27, 1956 through August 8, 1958, when the balance due was paid in full. During

---

[2] Defendants-appellants maintain that John S. Aipia and John C. Aipia are one and the same while plaintiffs-appellees do not address the discrepancy. For purposes of this appeal, we assume that the tax records actually refer to the original patentee, John S. Aipia.

[3] Mary Ann Lindsey is a granddaughter of John S. Aipia and a sister of defendant-appellant Kepano.

this period, the name and address of the assessee was listed as follows:

> John C. Aipia Estate
> c/o Joseph S. Aipia[4]
> 45-356 Makalanai Street
> Kaneohe, Hawaii

Delinquent taxes next accrued for the tax years 1960 and 1961. By November 16, 1962, the date of the tax sale in question herein, the total amount due for taxes, penalties and interest, and costs of administering the lien and sale was $47.22.

On October 15, 1962, the Department of Taxation issued a notice of the proposed sale of thirty-one properties for failure to pay property taxes. One of the properties was the parcel in question.

The notice listed the "Present Owners so far as shown by Records of Tax Office and Office of Assistant Registrar of the Land Court" as "John C. Aipia Estate." The Estate was also so listed as the "Persons Assessed."

The notice was published on four successive occasions prior to the sale in the *Hilo Tribune-Herald* (now *Hawaii Tribune-Herald*), a newspaper with a general circulation primarily restricted to the Island of Hawaii. A department official swore by affidavit that the notice was posted on the property on the same day it was issued. There is no evidence of any other posting of the notice.

Finally and most importantly, there is no evidence that the notice was mailed or otherwise made personally known to any one of the issue of John C. Aipia, including Mary Ann Lindsey and Joseph S. Aipia, the persons whose names and addresses were listed on the tax records as living persons to whom assessments could be directed.

Pursuant to the notice, the property was sold at public auction on November 16, 1962, to Sidney and Terry Kaide upon their high bid of $1,900.[5] A tax deed was issued to the Kaides as tenants by the entirety on January 3, 1963, and was recorded shortly thereafter.

On November 4, 1971, the Kaides conveyed the property by

---

[4] Joseph S. Aipia is either a son or a grandson of John S. Aipia.

[5] No formal assessment of the value of the property on the date of sale appears in the record. Defendants-appellants, however, estimate the value then as $3,725.

warranty deed to Hazel Y. Klinger, one of the plaintiffs-appellees in this action.[6] The deed was recorded on November 17 of that year.

In August, 1974, the Klingers, who are residents of Ohio, visited their property for the first time and learned that Louis Kepano, Sr., his son-in-law Henry Mahi, and others were occupying the land. Subsequently, they asked Kepano, et al. to vacate the property, but the latter refused.

On August 22, 1975, the Klingers filed an action in ejectment against Louis Kepano, Sr., Henry Mahi and assorted Does to recover possession and damages from defendants' wrongful withholding of possession. Defendants Kepano and Mahi answered, denying plaintiffs Klingers' ownership and right to possession of the property.[7]

Plaintiffs then moved for summary judgment on the basis that the November 16, 1962 tax sale to their predecessors-in-interest had been conducted in full compliance with statutory requirements and that they therefore had good title. Defendants responded with their own motion for summary judgment on plaintiffs' action in ejectment on the bases that there had not been full compliance and, even if there had been, the deed was invalid because notice of the pending sale had been constitutionally inadequate.

On April 5, 1977, the trial court granted plaintiffs' motion. The court held that there had been compliance with the statute and that the notice given had been constitutionally adequate. Defendants appealed therefrom, contending that (1) there were genuine issues of material fact whether there was compliance with the statute, and (2) the statute was unconstitutional on its face and/or as applied insofar as procedural due process was not afforded.

---

[6] Hazel Klinger later quitclaimed to her husband, Walter Klinger, the other plaintiff-appellee herein, an undivided one-half interest in the property as tenant in common.

[7] Defendants also counterclaimed that they were owners of undivided interests in the property by way of descent and prayed for the partition of the property and the quieting of title in themselves. In this connection, they later moved to amend their answer and counterclaim to add the remaining known issue of John S. Aipia as defendants to plaintiffs' action in ejectment and as counterclaimants in the quiet title counterclaim. Plaintiffs moved to dismiss the counterclaim and to strike defendants' motion to amend on the basis that the action was in ejectment, not to quiet title. The trial court granted plaintiffs' motion, and no appeal therefrom was taken.

II.

The sole issue we address on this appeal is whether the notice afforded of the proposed tax lien foreclosure sale failed to meet minimum standards of due process required by U.S. Const. amend. XIV and Hawaii Const. art. I, § 4 such that the tax deed to plaintiffs-appellees' predecessors-in-interest is invalid.[8]

A.

Two principles set the parameters of our discussion. On the one hand, real property tax lien foreclosure sales are not per se violative of basic constitutional guarantees. *Nelson v. New York City,* 352 U.S. 103, 110 (1956); *Kelly v. Pittsburg,* 104 U.S. 78, 80 (1881). On the other hand, forfeitures are not favored and should be enforced "only when within both letter and spirit of the law." *United States v. One 1936 Model Ford,* 307 U.S. 219, 226 (1939).

The due process clause, U.S. Const. amend. XIV,[9] defines that middle ground in which a state may fairly cause a forfeiture of title to realty as incident to its power to tax.[10] We must give substance to the procedural safeguards contained therein by determining "what process is due," *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972), before such forfeiture may be effected.

In considering this question, we are guided by the United States Supreme Court's analysis in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950). *Mullane* determined in part whether a state statute which permitted notice by publication alone to trust benefi-

---

[8] We need not address the issue of statutory compliance since we decide herein that even if the requirements of the statute were met, the deed was nevertheless invalid for failure of constitutionally adequate notice.

[9] "[N]or shall any State deprive any person of life, liberty or property, without due process of law[.]"

[10] In considering alleged due process clause violations, a court must first determine "whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). There is no doubt that the reference to "property" encompasses interests in realty. Board of Regents v. Roth, 408 U.S. 564, 571-72 (1972); Covey v. Town of Somers, 351 U.S. 141, 146-47 (1956).

ciaries regarding judicial settlement of trust accounts was constitutional as applied to known beneficiaries with known mailing addresses. The Court held that it was not. *Id.* at 320.

The Court noted that due process "at a minimum . . . require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* at 313. It then set out the following general rule:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. . . . The notice must be of such nature as reasonable to convey the required information . . . . [I]f with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. . . .

> But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of *actually informing* the absentee might *reasonably* adopt to accomplish it.

*Id.* at 314-15 (emphasis added).

With regard to notice by publication, the Court noted that publication properly serves as a supplement "to other action which in itself may reasonably be expected to convey a warning." *Id.* at 316. It acknowledged that in appropriate circumstances, notice by publication alone might be the only "reasonably possible or practicable" warning. *Id.* at 317. The Court made clear, however, that such notice is disfavored, adopting a common-sense approach to the critical distinction between notice which is "mere gesture" and that which might reasonably inform:

> It would be idle to pretend that publication alone, as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts. . . . Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed.

*Id.* at 315.

> Publication may theoretically be available for all the world to see, but it is too much in our day to suppose that each or any individual beneficiary does or could examine all that is published to see if something may be tucked away in it that affects his property interests.

*Id.* at 320.

In subsequent decisions, the Court has emphasized both the flexible nature of the standard for determining adequate due process under *Mullane* as well as the broad applicability of the general principles enunciated therein. In *New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293 (1953), for example, it held that certain creditors in a bankruptcy reorganization whose claims were otherwise precluded because they had not responded to notice solely by publication had been denied due process. The Court reiterated the limitations of published notice: "Notice by publication is a poor and sometimes a hopeless substitute for actual service of notice. Its justification is difficult at best." *Id.* at 296. In *Walker v. Hutchinson City,* 352 U.S. 112 (1956), notice by publication alone of a condemnation proceeding was held unconstitutional.[11] And in *Robinson v. Hanrahan,* 409 U.S. 38 (1972), even notice by certified mail of pending automobile forfeiture proceedings was inadequate where the state knew the owner was jailed.

Two Supreme Court decisions in the *Mullane* line are particularly relevant to this case because both deal with real property interests and notice requirements where the Government had specific knowledge of the landowner's identity. In *Covey v. Town of Somers,* 351 U.S. 141 (1956), notice of a pending foreclosure sale was given to a landowner by publication, by posting, *and* by mail, in full compliance with a state statute providing for judicial foreclosure of

---

[11] It is common knowledge that mere newspaper publication rarely informs a landowner of proceedings against his property. In *Mullane* we pointed out many of the infirmities of such notice and emphasized the advantage of some kind of personal notice to interested parties. In the present case there seem to be no compelling or persuasive reasons why such direct notice cannot be given. Appellant's name was known to the city and was on the official records. Even a letter would have apprised him that his property was about to be taken and that he must appear if he wanted to be heard as to its value. *Id.* at 116.

real property tax liens. The taxing authority, however, knew that the landowner was an incompetent. The Supreme Court held that the incompetent had been denied due process. "Notice to a person known to be an incompetent who is without the protection of a guardian does not measure up to . . . [the *Mullane*] requirement. . . . [C]ompliance with the statute would not afford notice to the incompetent and . . . a taking under such circumstances would be without due process of law." *Id.* at 146-47. And in *Schroeder v. New York,* 371 U.S. 208 (1962), notice of condemnation proceedings by publication and by posting was held constitutionally inadequate where the landowner's name could easily have been ascertained from deed records and tax rolls. "The general rule that emerges from the *Mullane* case is that notice by publication is not enough with respect to a person whose name and address are known. . . ." *Id.* at 212-13.

Finally, in *Freitas v. Gomes,* 52 Haw. 145, 472 P.2d 494 (1970), we applied the *Mullane* doctrine to determine the constitutionality of a statute which provided only for published notice of judicial hearings according finality to the distribution of a decedent's assets. Rejecting the "notion that death imports notice," *id.* at 153, 472 P.2d at 499, we held that notice of such proceedings "must . . . be mailed, where the names and addresses of interested persons are known, or by reasonable diligence can be ascertained by executors and administrators, unless notice is otherwise personally served." *Id.* And in *In re Complaint of Vockrodt,* 50 Haw. 201, 205 n.5, 436 P.2d 752, 755 n.5 (1968), we held, quoting *Mullane,* that notice by posting and publication of an adverse possession claim was sufficient only as to potential claimants who "*cannot* be found." *Id.* at 204, 436 P.2d at 754 (emphasis added).[12]

---

[12] Our Intermediate Court of Appeals has recently addressed substantially the same question as we did in *Vockrodt.* Calasa v. Greenwell, 2 Haw. App. 395, 633 P.2d 553 (1981). Quoting *Mullane,* it held that in adverse possession actions notice by publication and posting is valid service on nonresident defendants whose addresses are unknown. We agree, but with the caveat that the *Mullane* doctrine appears to require some minimal degree of due diligence to ascertain the address of a nonresident defendant. Otherwise, there would be no incentive for a quiet title plaintiff to make known the address of a nonresident defendant, and due process would not be afforded.

## B.

In light of the above, we think it abundantly clear that the general principles enunciated in *Mullane* and its progeny control our consideration of the constitutional adequacy of the notice provided defendants-appellants in the instant case.[13] We therefore turn to an appraisal of whether the notice afforded appellants under RLH §§ 128-39 and -41 (1955) (quoted in n.1, *supra*) was "reasonably calculated, under all the circumstances, to apprise" them that their property was sold for failure to pay taxes. *Mullane, supra,* 339 U.S. at 314.

As noted above, section 128-39 required two types of notice of pending sale: publication in a general circulation newspaper at least once a week for four successive weeks, and posting "for a like period in at least three public places within . . . [the] taxation division," with one of the postings to be on the land to be sold if improved. Notice by mail or otherwise was not required under any circumstance.[14]

---

[13] In so holding, we decline to follow those of our sister states which find that "legislation designed to speed and secure tax collections is a thing apart and that an entirely different and lesser test of due process is to be applied in that limited field as distinguished from other laws of general application." Inhabitants of Town of Warren v. Norwood, 24 A.2d 229, 237 (Me. 1941), *approved in* City of Auburn v. Mandarelli, 320 A.2d 22, 29-30 (Me. 1974). There may be aspects of property tax collection unique to that field, but the *Mullane* doctrine is flexible enough to encompass them as "practicalities and peculiarities of the case." *Mullane, supra,* 339 U.S. at 314.

[14] Pursuant to Act 71, § 1, 1976 Hawaii Sess. Laws 88, 88-89, (codified at HRS § 246-56 (1976)), § 128-39 was amended effective May 10, 1976 by adding the following additional notice requirement:

If the address of the owner is known or can be ascertained by due diligence, including an abstract of title or title search, the tax collector shall send to each owner notice of the proposed sale by registered mail, with request for return receipt. If the address of the owner is unknown, the tax collector shall send a notice to the owner at his last known address as shown on the records of the department of taxation. The notice shall be deposited in the mail at least 45 days prior to the date set for the sale.

According to the relevant legislative history, the purpose of the amendment was "to provide sufficient notice to landowners whose property is subject to sale to satisfy a tax lien," upon the legislative finding that existing notice requirements were "inadequate." S. Stand. Comm. Rep. No. 613, 8th Hawaii Leg., 2d Sess. 1, *reprinted in Senate Journal* 1150 (1976).

Good faith compliance with the statute as amended would appear to satisfy minimal due process requirements in the great majority of situations. However, we caution that there may be unique circumstances where this would not be the case. The particular fact situation in Covey v. Town of Somers, *supra,* is such an example.

We have assumed statutory compliance. Nevertheless, we have no difficulty in concluding that the tax office's failure to notify Mary Ann Lindsey or Joseph S. Aipia constituted a denial of due process to the heirs of John C. Aipia sufficient to invalidate the subsequent sale.[15] Notice solely by publication and posting was not "reasonably calculated" to apprise the heirs of the pending sale because the tax office knew the names and addresses of two persons, one with the same last name as the deceased, who clearly were interested in the land. Notice by mail to both Lindsey and Aipia was the minimal means that one "desirous of actually informing" the heirs would reasonably have undertaken.[16]

## C.

At oral argument, plaintiffs-appellees advanced the oft-stated theory that even if *Mullane* does apply to notice of tax sales, a lesser degree of notice is required thereunder because a delinquent tax-payer is already on notice that his property will be sold if he does not pay the tax. *See generally* Note, *The Constitutionality of Notice by Publication in Tax Sale Proceedings*, 84 Yale L.J. 1505, 1511-13 (1975). In response, we adopt the following refutations of this argument summarized in the article just cited: (1) *Mullane* does not make the adequacy of notice turn wholly on the possible awareness of pending

---

[15] Plaintiffs-appellees unconvincingly argue that defendants-appellants did not overcome their burden of proving that notice was not mailed. They rely on RLH § 128-45(f) (1955) (current version at HRS § 246-62(6) (1976), which provided that a tax deed issued following foreclosure sale is prima facie evidence that the "sale was made upon full compliance with sections 128-39 to 128-44 and all laws relating thereto, and after giving notice as required by law." Because notice by mail was not then required by law, the statutory presumption did not include notice by mail. On the contrary, the otherwise applicable common law rule is that he who asserts the validity of the tax deed bears the burden of showing all aspects of its validity. *See* Werking v. Amity Estates, Inc., 2 N.Y.2d 43, 137 N.E.2d 321, 324, 155 N.Y.S.2d 633, 638 (1956). We find nothing in the record upon which to conclude that plaintiffs-appellees met their burden of showing such notice was made.

[16] The facts well illustrate the dangers of notice solely by publication and/or posting. The notice was published in a newspaper with a general circulation restricted primarily to the Island of Hawaii, yet it appears that several of the issue of John C. Aipia were then living on a different island. We assume here that the notice was posted on the land, yet it appears that the land was then vacant.

action by the person whose rights are to be affected, *id.* at 1512; and (2) while landowners are held to a knowledge of annual property taxes, they are not necessarily held to a knowledge that the property may be sold for failure to pay them. *Id.* at 1511-12. This is especially true where, as here, there were a number of consecutive years of delinquent taxes without a tax sale occurring as a result.

Plaintiffs-appellees also argue that if we invalidate this sale on due process grounds, we will in essence impose on tax offices a duty to probate the estates of deceased intestate landowners in order to ascertain the heirs to whom notice of tax sales is to be given. We do not so hold, but decide only that the tax office here did not afford minimal due process by failing to mail notice to specific persons at specific addresses who clearly had an interest in estate property. We do note, however, that where tax office records list the owner of property as the estate of a deceased, and no other information is present, *Mullane* appears to require some reasonable further inquiry to ascertain the identity of one or more living interested persons to whom notice might be given. After all, as other courts have noted, notice addressed to a dead person is no notice at all. *See, e.g., Di-Giovanni v. Cortinas,* 216 La. 687, 695, 44 So.2d 818, 820 (1950).

### D.

We also hold that the notice provided in this case failed to meet the minimal standards of due process guaranteed by Hawaii Const. art. I, § 4.[17] We are of course not constrained in our interpretation of our state constitution to adopt federal interpretations of similar provisions of the United States Constitution. Nor have we hesitated to provide greater protections under our constitution than those afforded under analogous federal provisions. *See, e.g., State v. Huelsman,* 60 Haw. 71, 88, 588 P.2d 394 (1978) (Hawaii Const. art. I, § 4 guarantees against deprivation of liberty without due process not necessarily limited to those provided under U.S. Const. amend. XIV).

In the instant case, however, we adopt the reasoning of *Mullane* and its progeny as our interpretation of the due process clause of the

---

[17] "No person shall be deprived of life, liberty or property without due process of law . . . ."

Constitution of Hawaii. In so doing, we hold that Haw. Const. art. I, § 4 affords an adequate and independent ground for our decision.

### III.

We are sensitive to the potential impact of our decision today on tax deed-based land titles. In order to mitigate such impact, we restrict the applicability of our holding to the instant case and to other cases in which a complaint questioning the constitutional adequacy of notice given under RLH §§ 128-39 and -41 (1955) had been filed as of the date of this decision.[18] *See Great Northern Railway Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 363-66 (1932) (prospective rulings constitutional); *Township of Montville v. Block 69, Lot 10,* 74 N.J. 1, 20, 376 A.2d 909, 918 (1977) (notice by publication alone of tax foreclosure unconstitutional where owner's name and address known, but decision applied prospectively); Note, *The Constitutionality of Notice by Publication in Tax Sale Proceedings, supra,* 84 Yale L.J. at 1516-17.

### IV.

We hold that the notice afforded defendants-appellants of the proposed tax lien foreclosure sale failed to meet minimum standards of due process under U.S. Const. amend. XIV and Hawaii Const. art. I, § 4 such that the subsequent tax deed is invalid. We therefore reverse and remand to the trial court with the direction that it enter judgment for defendants-appellants on their motion for summary judgment.

*Stanley H. Roehrig* for defendants-appellants.

*Mark Van Pernis (Sterry, Mah & Gallup* of counsel) for plaintiffs-appellees.

---

[18] As noted at n.14, *supra,* § 128-39 was amended effective May 10, 1976 to strengthen the statutory notice requirements. The prospective application of this decision does not in any way preclude actions to challenge the constitutional validity of notice given under the amended statute, HRS § 246-56 (1976).