CITY OF NEWARK, PLAINTIFF, v. BLOCK 86, LOT 30, 350 WASHINGTON ST., ETC., *ET AL.*, DEFENDANTS,

CITY OF NEWARK, PLAINTIFF, v. BLOCK 2664, LOT 32, ETC., *ET AL.*, DEFENDANTS,

CITY OF NEWARK, PLAINTIFF, v. BLOCK 210, LOT 48, 246 NORFOLK ST., ETC., *ET AL.*,

Superior Court of New Jersey
Chancery Division

Decided March 24, 1967.

470

*Mr. Norman N. Schiff,* attorney for plaintiff (*Mr. Louis A. Vespasiano,* of counsel and on the brief).

*Mr. Sidney K. Werbel,* attorney for defendants Eleanor S. Werbel, Municipal Lien Co., Limited and Home Owners Mortgage Co., Limited.

*Miss M. Bernadine Johnson,* attorney for defendant George Willis, individually, etc.

*Mr. Louis Zemel,* attorney for defendant Madison Realty Co. and for Louis Zemel, trustee.

HERBERT, J. S. C. Plaintiff City of Newark, sues under the *In Rem* Tax Forclosure Act (*N. J. S. A.* 54:5–104.29 *et seq.*) to foreclose tax sale certificates covering several pieces of property. The defendants hold interests in the various parcels. Although they do not all set up the same defenses, the following contentions against the city's alleged rights to foreclosure judgments are found in the combined cases: that the *In Rem* Tax Foreclosure Act is

unconstitutional; if not unconstitutional, it is meant to apply only to vacant land; and even if the statute is applicable to this case, foreclosure is barred, first because excessive interest charges by the city taint its foreclosure action, and second because defendants made a valid tender of redemption and thus can invoke *N. J. S. A.* 54:5–104.34(b). There is also a contention that plaintiff did not meet the requirements of *R. R.* 4:82–7(d) when it posted notices. Some defendants in their pleadings raised an issue as to whether the city has or is taking their property without due compensation, claiming that the city, by declaring land blighted under *N. J. S. A.* 40:55–21.6, caused defendants' tenants to abandon the property which then became blighted in fact. This issue was not pursued at trial, however, and therefore need not be considered here.

I

Defendants' assertions that the *In Rem* Tax Foreclosure Act is unconstitutional were disposed of when, 17 years ago, the act was upheld. *City of Newark v. Yeskel,* 5 *N. J.* 313 (1950). There defendant Yeskel had contracted to buy property from the city but refused to perform, claiming that the city could not convey marketable title because whatever ownership it had was based upon a foreclosure under the *In Rem* Tax Foreclosure Act. Defendant contended that the act was unconstitutional and, therefore, the city's title was defective. In upholding the act the court said:

"It must be observed that a tax proceeding is not a suit between parties but is the exercise of the sovereign's prerogative power to tax. The state is the one party; the property the other. The doctrine to be evolved from the cases is that where the owner of property is given a right to redeem by statute and has had the opportunity to contest the assessment, the extinguishment of his rights in the property, either by the tax sale itself or by subsequent proceedings, may be accomplished by a strict adherence to the enabling statute which may limit the notice to be given of the proposed action to bar the right of redemption to posting or publication or no notice other than the statute

itself, and any of said forms of notice shall be sufficient to satisfy the requirements of constitutional due process both as to residents and nonresidents." (at *p.* 323)

"A consideration of the notice prescribed by *L.* 1948, *c.* 96 (*N. J. S. A.* 54:5–104.29 *et seq.*) in the light of the prescribed notice and opportunities for hearing and appeal incident to the assessment of the tax, and the prescribed notices incident to the tax sale itself, result in the inescapable conclusion that the statute under attack clearly meets the requirements of constitutional due process as delineated in the numerous decisions of the Supreme Court of the United States and of the various state courts in which the question has been passed upon." (at *p.* 327)

## II

■ Defendants' argument that the *In Rem* Tax Foreclosure Act applies only to vacant or abandoned land is not persuasive. To support their argument, they rely on statements from the *First Report of the Commission on State Tax Policy*. The statements of the Commission quoted in defendants' brief are to the effect that the procedure under the *In Rem* Tax Foreclosure Act is particularly suited to property of small value or where the owners are unknown. The quoted passages do not state, however, that *in rem* procedure should not be applied to occupied land. More important, the words of the statute in no way indicate it is applicable only to vacant or abandoned land. *N. J. S. A.* 54:5–104.35, which empowers the municipality to foreclose tax certificates by a summary proceeding states:

"The governing body of any municipality may, from time to time, determine, by resolution, to foreclose any of the tax sale certificates held by it, by the summary proceedings *In Rem* provided by this act. Such resolution shall list the lands against which such proceedings shall be instituted."

The word "lands" indicates the subject matter of an *in rem* proceeding and is defined in *N. J. S. A.* 54:5–104.30, which provides:

"(d) 'Land' or 'lands' shall mean and include all real property."

This definition would seem to dispose of the defendants' contention that the act applies only to unoccupied land.

### III

Steps were taken toward redemption of some of the properties. In that connection the defendants were confronted with demands by the city for 8% interest on taxes which had become delinquent subsequent to those covered by the certificates which the city now seeks to foreclose. These demands for 8% interest are the basis of defendants' contention that "excessive interest charges taint plaintiff's transaction and should bar relief." The issue underlying that contention involves the correct rate of interest under *R. S.* 54:5–59. This section of the statutes specifies the items to be paid in order to redeem municipally held tax sale certificates and requires payment of all taxes, with interest, subsequent to those for which the tax sale was held.

Defendants admit, as they must, that on redemption the city is entitled to 8% interest on back taxes which are the subject of the tax sale certificates held by it. *N. J. S. A.* 54:5–34. But the defendants claim there is no merger of subsequent delinquent taxes with those covered by the certificates, and thus the subsequent taxes are not covered by the 8% interest rate contained in *N. J. S. A.* 54:5–34. Instead, they assert that such taxes must be dealt with under *N. J. S. A.* 54:4–67. This section enables a municipality to assess interest for delinquent taxes at a rate which "shall not exceed eight per cent per annum." Under this provision of the statute the governing body of the City of Newark has passed annual resolutions fixing the interest rate for delinquent taxes at 7%. Defendants argue that one who is redeeming a tax sale certificate held by the City of Newark should pay this 7% rate on all delinquent taxes subsequent to those represented by the certificate.

*Long Beach Township v. Daniel B. Frazier Co.,* 112 *N. J. Eq.* 329 (*E. & A.* 1933), disposes of the defendants' argu-

ment as to the proper interest rate. The court in that case said:

"As a result of this action by the court below the issue before the court of chancery at final hearing resolved itself into a question of what rate of interest, if any, the municipality was entitled to collect upon a redemption of the properties involved from the tax sales which were the subject of foreclosure. It was conceded in the court below that there was no issue with respect to the rate of interest on the amount required to redeem from the various tax sales, except as to the taxes which became delinquent subsequent to the time when the property was sold for taxes." (at *p.* 330)

After thus stating the issue the court pointed out that Long Beach had neglected to pass a resolution fixing the rate of interest to be charged upon delinquent taxes, as it was entitled to do by statute. Defendant argued that in the absence of such a resolution, one redeeming property from a tax sale could not be charged any interest at all on taxes which became due after those covered by the certificate. The township, on the other hand, contended that since *section* 603 of *chapter* 236 of the *Laws of* 1918 (now, with relatively minor changes, *N. J. S. A.* 54:4–67) authorized the fixing of a rate between a minimum of 7% and a maximum of 9%, the minimum should be chargeable even without a resolution having been adopted. Both the lower court and the Court of Errors and Appeals decided that the township was entitled to interest on taxes which had become due since the tax sale and allowed a rate of 8%, holding that section 25 of the Tax Sale Revision of 1918. *L.* 1918, *c.* 237, *p.* 888 (now, with relatively minor changes, *N. J. S. A.* 54:5–34) applied. Section 25 provided for redemption at an 8% rate on a tax sale certificate held by a municipality, just as *N. J. S. A.* 54:5–34 now provides for an 8% rate. The Township of Long Beach was held to be entitled to interest at that rate, not only on the certificate but also on all subsequent delinquent taxes, even though section 42 of the Tax Sale Revision, *L.* 1918, *c.* 237, § 42, *p.* 894 made no mention of a specific rate of interest and merely provided: "In

case the certificate of sale is held by the municipality, the amount required for redemption shall include all subsequent municipal liens, with interest and costs." Our statute today (*R. S.* 54:5–59) has in it the same language; namely, "the amount required for redemption shall include all subsequent municipal liens with interest and costs * * *." Speaking for a unanimous court, Judge Kays said:

"We think the Vice Chancellor properly decided this question for the reasons which he set forth and that when a property is purchased by a municipality at a tax sale, the provisions of section 25 of the Tax Sale Revision of 1918 (*P. L. 1918, p. 888*) controls not only the rate of interest which must be paid for the redemption of the taxes then due and delinquent for which the property is sold but also eight per centum upon all taxes which become delinquent subsequent thereto, to the time the property is redeemed." (at *p.* 332)

I conclude that the city was correct in charging interest at 8% on taxes which became delinquent subsequent to tax sales and should not be barred from foreclosing under any theory of inequitable dealing for demanding this rate. This should not be regarded as a suggestion that a demand for an 8% rate would bar foreclosure if the rate on later delinquencies really should be 7%. I am inclined to think that an overdemand of 1% should result only in an order setting the amount, time and place of redemption which will reflect the correct rate, but that need not be decided here.

## IV

Defendants Municipal Lien Co., Limited, Home Owners Mortgage Co., Limited, and Eleanor S. Werbel all take the position that tenders of payment were made to the City of Newark from time to time on some of the properties involved in these foreclosure actions. It is contended that some were made in the four years next preceding the start of suit and that, having been rejected by the city, they are in one sense the equivalent of tax payments. *N. J. S. A.* 54:5–104.34 reads:

"No action may be instituted under this act on any tax sale certificate unless:

a. More than two years have expired from the date of the tax sale out of which any such certificate arose, and

b. For the four calendar years next preceding the commencement of the action, no part of any general land taxes levied and assessed against the land covered by such certificate has been paid."

During the four years before the start of suit were tenders made in such a way as to be the equivalent of tax payments which would bar the action under *subparagraph* (b) quoted above? The essential facts are: Sidney Werbel, counsel for these three defendants, went on several occasions to the office of Arthur Dornbusch at the Newark City Hall. Dornbusch is the Supervisor of Tax Services for the city and in charge of the collection of delinquent taxes. Werbel testified that he saw Dornbusch in December 1963 and in November and December of 1964. Foreclosure complaints in these matters were filed on October 19, 1965 and December 3, 1965. During the course of each visit to Dornbusch's office Werbel offered a check signed by him but blank as to amount, and specified that it could be filled out and used to pay the proper amount of taxes due on the properties which Werbel specified he was interested in at the time. However, he stated a significant condition each time that he offered such a check. He stipulated that the check could be taken, filled out and used only if the city would assign to his clients the tax sale certificate held by the city on each of the properties for which the check was being offered. Whether Werbel made it clear that he was willing to have interest at 8%—rather than 7%—on subsequent delinquent taxes included in the amounts that he would pay is not clear from my trial notes, but the conclusion I am about to state will make it unnecessary to determine that.

Dornbusch, called as a witness by the city, corroborated in general the testimony of Werbel, although he was not able to be definite about the dates on which checks were offered to him. He did say, however, that on various occasions Werbel had tendered blank checks in payment of amounts

due for delinquent taxes; that these checks sometimes had been accepted, filled out and duly collected by the city. No offer of payment by Werbel on any property involved in these cases appears to have been rejected because of the absence of cash or certified check. The position Dornbusch did take on each offer was that an assignment of a tax sale certificate held by the city could only be executed and delivered after due consideration and appropriate action by the city council. When Dornbusch told Werbel on each occasion that $50 would have to be paid in connection with each certificate sought, to cover cost of advertising and other necessary expenses of presenting the matter to the council, there was a refusal to make the $50 payment.

It is contended here that defendants Municipal Lien Co., Home Owners Mortgage Co. and Eleanor S. Werbel, all holding interests in various properties short of fee ownership, were entitled to an assignment of the city's tax sale certificates as a matter of right, without any special consideration or action by the city council and without the payment of any expenses other than those chargeable to an owner who might seek to redeem a property previously sold to the city at a tax sale. The general rule is that where a tender is made upon condition that the creditor do something that he is not bound to do, the tender is invalid. However, where the condition is one which the payor has a right to insist upon, a tender made subject to that condition is valid. 52 *Am. Jur., Tender,* § 24, *p.* 232. To support their argument that they were offering to make a payment which would entitle them to an assignment of the tax sale certificates in question, these defendants rely on *R. S.* 54:5–54 and *R. S.* 54:5–56. The first of these sections gives a right to redeem to an owner or to any other person having an interest in land sold for municipal liens. It provides for payment of the amount required for redemption to the collecting official of the municipality "for the use of the purchaser, his heirs or assigns." The quoted language, in the context used, suggests that the section was drafted to

apply to redemptions of certificates held by holders other than the municipality.

The second of the sections referred to in the preceding paragraph (§ 56) is the one which expressly provides for an assignment of an outstanding certificate. Rather, I should say it *was* the one; it was repealed, effective December 14, 1965, by *L.* 1965, *c.* 187, § 3. At the time these actions were started it was still in effect and, of course, it was in force when Werbel made his offers prior to the start of suit. The text of § 56 follows:

"When the redemption is made by a mortgagee or other person not primarily liable to pay the municipal lien, but having a lien or interest in or on the land, the person so paying, if he so elect, shall succeed to the municipal lien paid by him, *and the purchaser, on receipt of the redemption money in full from the collecting officer, shall, at the option of the party making the payment, assign the certificate of sale* by assignment under seal and acknowledged as a conveyance of land to the person redeeming. When the person so paying redeems within ten days from the date of sale, if he so elect, the collector shall issue the certificate, at the rate bid, in the name of the person so redeeming."

The portion of the section which I have underlined is the only designation of the party who is to be the assignor. It will be seen that this designation by its terms applies to the holder of a tax sale certificate, *i. e.,* "the purchaser" at a tax sale, who is someone other than the taxing municipality.

In opposing defendants' asserted right to receive assignments much as a matter of course, without special charges and action by the council, the city argues that the controlling legislation is to be found in the provisions of the Tax Sale Law which govern the sale and the assignment of tax sale certificates held by a municipality: *R. S.* 54:5–113; *N. J. S. A.* 54:5–114.1 and 54:5–114.2. These provisions are phrased in permissive terms, stating that the municipality "may" sell such certificates. Also, the sections dealing with sale require the municipality to follow certain statutory procedures in making sales.

The statutory section on which Municipal Lien Co., Home Owners Mortgage Co., and Eleanor S. Werbel must rely (*R. S.* 54:5–56, quoted above) easily could have been drafted to provide expressly for an assignment by a certificate-holding municipality. Whatever the reason for not doing so, the important thing for present purposes is that it was not so drafted and, on the contrary, reads in such a way as to indicate an intent that it should apply only to certificate holders other than municipalities. I conclude that these three defendants were not entitled to assignments from the City of Newark under *R. S.* 54:5–56, and that the position taken by the city in these cases is sound. When Werbel applied to Dornbusch to have tax certificates assigned to his clients he was told correctly that action by the governing body would be necessary. And official authorization of assignments would have had to be based upon *R. S.* 54:5–113 and 114, or *N. J. S. A.* 54:5–114.1 or *N. J. S. A.* 54:5–114.2, all of which statutory methods include a requirement for public advertising. Because of the unjustifiable insistence upon the right to assignments, Werbel did not make valid tenders when he offered his checks to the city.

One case has come to my attention which looks in the opposite direction, however. *North Jersey Holding Co. v. Snow,* 129 *N. J. Eq.* 555 (*E. & A.* 1941). There a tax sale was held at which the municipality acquired the tax sale certificate. The holder of a mortgage on the premises in question then paid the municipality and obtained an assignment. There is no indication that the municipality objected in any way to executing an assignment or that the mortgagee refused to respond to any demand for a deposit to cover advertising expenses, if indeed any such demand was made. Concerning the position of the assignee, the court had this to say:

"Complainant was the mortgagee and as a person not primarily liable was within its rights (*R. S.* 54:5–56) in electing to succeed to the municipal lien which was prior to the lien of the mortgage and therefore not an encumbrance which due pleading required should be

set up in the foreclosure bill. Complainant made clear to the municipal authorities that it was taking an assignment rather than effecting a redemption, as is evidenced by the contemporaneous letter from the attorney for the township and by the assignment and certificate which were delivered after some delay caused, according to the testimony of the township attorney, by the pressure of conducting 2,400 simultaneous foreclosure suits, and which were recorded by the complainant as soon as received." (at *p.* 559)

The court was commenting about an accomplished fact. The assignment had been asked for and had been obtained, and there is no indication whether any question was or was not raised at the time. I do not regard this case as sufficient authority for my reading into *R. S.* 54:5–56 a legislative intent to impose on municipalities the same obligation to make assignments of certificates held by them as that expressly imposed on a nonmunicipal holder by the section while it was on the statute books. *The Tax-Investment Corp. of New Jersey v. Dilts,* 131 *N. J. L.* 437 (*Sup. Ct.* 1944) which is cited by these defendants is not in point; it did not involve any question of assigning a municipally-held certificate to a mortgagee or other person not primarily liable to pay the municipal lien.

V

Defendant Louis Zemel, trustee, offered proofs for the purpose of showing that requirements for posting of notices found in *R. R.* 4:82–7(d) had not been properly complied with. He testified that on December 15, 1965 he had inspected some of the bulletin boards used by the city for these cases and had failed to find any pertinent notices. He also testified that some boards were cluttered up with many notices and that on one board notices could be placed so high as to be very difficult to read. The man who actually posted notices for the city was a witness. He told of placing notices in these cases on November 16, 1965 on five bulletin boards located as follows: in the tax office at the Newark City Hall, in the basement of Newark City Hall, in the

Essex County Register's Office, in the basement of the Essex County Court House and in the Federal Building in Newark. No question is raised about the propriety of the date on which this posting was done. Also, *subsection* (d) of the rule contains no requirement that a posted notice must remain in place for any specified period of time. I find no merit in Mr. Zemel's challenge to the sufficiency of the posted notices.

## VI

In all or some of the complaints before me Madison Realty Co., Inc. is described as a transferee of certain of the properties. As to those properties, answers were filed by Louis Zemel, acting *pro se*. Among other things, the answers denied that title was in Madison Realty Co., Inc. and alleged title to be in Louis Zemel, trustee. At trial the proofs showed a transfer from Madison Realty Co. to Zemel, trustee, in 1962. At least one order of amendment to show this transfer to Louis Zemel, trustee, was entered (*Docket* F 648–65). Because of the number of files in these cases resulting from application of the severance features of *R. R.* 4:82–6 I am uncertain whether any similar orders of amendment are called for under other docket numbers to make the pleadings and proofs conform. If so, such orders can be submitted.

As to all of the properties here involved, the City of Newark is entitled to have orders entered setting the amounts due and fixing time and place of redemption.