STEWART H. EVANS, APPELLANT, V. ROBERT V. EVANS, JR.,
ET AL., APPELLEES.

259 N. W. 2d 925

Filed November 30, 1977. No. 41069.

Jess C. Nielsen of Crosby & Nielsen, for appellant.

Milton C. Murphy of Murphy, Pederson & Piccolo, LeRoy Anderson, and Donald H. Kelley of Kelley & Wallace, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

SPENCER, J.

This action was originally commenced as one in partition. Partition in kind was confirmed. Subsequently, a petition for damages, cross-petitions, and a petition for an injunction were filed. These were tried in 11 different sessions, over a 2-year period. Plaintiff appeals from orders of the trial court dividing the attorneys' fees on partition; denying several of his claims for damages; and allowing damages to the defendants-appellees on their cross-petitions. We affirm.

The principal parties are four brothers: Stewart, Robert, Donald, and Fredrick. Eloise H. Evans, their mother, died intestate on March 18, 1973, seized

of extensive farm and ranch lands in Lincoln and Perkins Counties as well as a home and substantial personal property in Lancaster County. Administration of the estate was commenced in Lancaster County. The estate, the value of which was estimated between 1 and 2 million dollars, needed cash funding of a substantial amount for taxes. A decree of heirship was entered April 17, 1973. The heirs-at-law, the four sons, took immediate possession of all real estate subject to any claims of the estate.

Certain of the ranch land had been occupied for many years by Fredrick. The balance of the land, including 1,029 acres of dry land, 298 acres of irrigated land, and 1,154 acres of grazing land, were occupied by Stewart. Immediately following the death of their mother, three of the brothers, Stewart and Robert, who were coadministrators of the estate, and Donald conferred with counsel for the estate regarding the need for arrangements to operate the lands pending the payment of the estate taxes. It was orally agreed that Stewart would continue to operate the land he had been using. The exact terms of this agreement is one of the major points of contention herein.

Stewart essentially contends he was to carry on operations as before with the brothers personally putting up the necessary cash to fund the operation, as had been done by his mother. The other brothers contend the agreement provided Stewart was to continue to operate the lands he operated before, on a landlord-tenant relationship. The division was to be one-third to the landlord, and two-thirds to the tenant. It was their further contention that any cash needed for the landlord's share of the operation was to be paid from the estate account.

Stewart paid certain of the 1973 farming expenses from the estate account. Subsequently, on his own initiative, he decided to terminate the use of estate funds. He then made demand upon his brothers for

funds for the operation of the land, telling them he was converting his possession from that of a tenant to an owner in common. The record is undisputed the estate was fully solvent and capable of paying any bills incurred.

Much of Stewart's case is premised on his contention that no definite agreement was ever reached. He denies that a landlord and tenant relationship was ever created. It is his position the brothers were tenants in common, and the laws of cotenancy, not landlord and tenant, govern their relationship.

Stewart filed the petition in partition April 11, 1974. Donald filed an answer, alleging that an order had been entered barring claims in the estate of Eloise H. Evans. Donald further alleged that all claims, taxes, and expenses of administration had been paid or provided for, and that ample cash, securities, or proceeds were in the hands of the administrators or available to them for the payment of any obligations of the estate. He joined in the prayer for partition. By way of cross-petition, Donald prayed for an accounting from Stewart and Fredrick, covering their operations of the real estate managed by them.

Subsequently, Donald filed a petition for the appointment of a receiver. Attached to that petition is a copy of a release, signed by the four heirs, listing liabilities, debts, taxes, and costs of administration as of May 7, 1974. This instrument authorizes the administrator to continue to hold the listed securities in the estate. It authorizes them to use the net proceeds from the sale of real estate made, and to be made, to pay the debts and expenses of the estate. This instrument releases and discharges the administrators and the surety on their bond from any and all liability, claims, and demands for the past, present, or future use of the proceeds of real estate sales to pay estate debts and expenses.

Fredrick filed an answer in the partition action. He alleged the petition failed to set out the necessary

facts to constitute a cause of action, and prayed that it be dismissed. By way of cross-petition he prayed for partition.

On July 29, 1974, after hearing, the court appointed a receiver; named him also as referee; and directed him to proceed with partition. The court further determined Stewart, Robert, Fredrick, and Donald were owners in fee simple of the real estate to be partitioned.

On December 3, 1974, the court entered an order confirming the report of the receiver and referee. It confirmed the referee's report and allotted to each of the four heirs the share of the property assigned to him in that report. It further directed the referee to convey to the heirs the real estate allotted to them.

On March 24, 1975, Robert and Donald filed a petition for an injunction to prevent Stewart from removing fences and well equipment from the land assigned to them. A temporary injunction was granted. Stewart cross-petitioned for a return of the property. On July 30, 1975, the temporary injunction was made permanent, and Stewart's cross-petition was dismissed.

On April 9, 1975, Stewart filed a pleading entitled "Claims and Supplemental Petition." He set out 10 causes of action, synopsized as follows:

(I) Reimbursement for out-of-pocket expenses incurred in managing the land prior to partition, including attorney's fees, abstracting fees, and other expenses relating to the negotiation and transfer of an easement to NPPD; expenses for repairs made to the property; fertilizer expenses; and traveling expenses.

(II) Payment of a claim for improvements made to the property prior to the death of decedent, which claim plaintiff did not present to the estate pursuant to an agreement with defendants.

(III) Reimbursement for expenses for summer-fallow work performed in 1974.

(IV) Reimbursement for expenses for harvesting wheat in 1974.

(V) Return of warehouse receipts for the 1974 wheat crop which plaintiff had previously been ordered to give to the receiver.

(VI) Damages for lost profits on the 1974 wheat crop caused by the refusal of defendants to advance working capital.

(VII) Damages for lost profits on the 1973 corn crop caused by the refusal of defendants to advance working capital.

(VIII) Damages for lost profits on the 1974 corn crop caused by the appointment of a receiver.

(IX) Damages for lost profits on the 1974 corn crop caused by the refusal of defendants to allow plaintiff to remove and use irrigation equipment.

(X) Attorneys' fees for services performed in the partition action.

The three other brothers filed answers and cross-petitions to the supplemental petition. In the cross-petitions they sought to recover for lost profits on the various crops which plaintiff abandoned because of his claim they violated their agreement by failing to advance working capital.

On June 17, 1975, all the claims and causes of action of Stewart except cause X were heard. Cause X was reserved for further hearing by agreement of the parties. The court dismissed causes II through IX with prejudice, at plaintiff's cost. Trial on cause I was continued until further order of the court. Plaintiff filed a motion for a new trial June 23, 1975, covering causes II through IX.

On July 29 and 30, 1975, trial was had on causes I and X. In a judgment entered on March 23, 1976, plaintiff was allowed a partial recovery on cause I, and the defendants were awarded damages on their cross-petitions in the amount of $15,265.23 each. This amount was reduced after a hearing on the motion

for new trial by an order entered August 16, 1976, to the amount of $14,379.52.

Stewart filed objections to the receiver's reports on June 15, 1976. On July 22, 1976, the court considered the objections. It dismissed some of them and continued the hearing as to others. On that date, it also set fees for the referee, the receiver, and the attorneys for services incident to the partition of the real estate and the receivership. No motion for new trial was filed on the order for fees, which Stewart is attacking in this appeal. The trial court divided the attorneys' fees pursuant to section 25-21,108, R. R. S. 1943, on the theory that plaintiff had not pleaded the facts fully and accurately in his petition. Ordinarily, the division of attorneys' fees rests in the sound judicial discretion of the trial court. Stoddard v. Montgomery, 169 Neb. 252, 98 N. W. 2d 875 (1959).

The final hearing herein was held August 26, 1976. At that time the remaining objections to the receiver's report were dismissed. The plaintiff's motion for a new trial, filed on June 23, 1975, with respect to the dismissal of his causes of action II through IX, was overruled as of July 29, 1975, nunc pro tunc. Stewart filed a motion for a new trial August 31, 1976, which was overruled September 1, 1976. Notice of appeal was filed on September 14, 1976.

The piecemeal trial of the issues herein has created many problems, including the problem of the finality of some of the orders entered. The action started as one in partition, with the appointment of a receiver, who was also appointed as referee, to handle the property pending the partition. Partition in kind was effected, and the shares of the heirs-at-law confirmed. The action was then continued on the report of the receiver and on a petition for an injunction covering the removal of property from some of the lands assigned. Thereafter, a pleading

denominated "Claims and Supplemental Petition" was filed. These were the matters which were subsequently tried.

We agree with the defendants, an order fixing fees in a partition action is a final, appealable order. § 25-21,108, R. R. S. 1943. Nothing remained to be done by the referee in the partition but to see that the fees were paid and proper receipts obtained. While not exactly in point, the case of Lewis v. Gallemore, 173 Neb. 441, 113 N. W. 2d 595 (1962), in which we said: "An order confirming a sale by a receiver is a final order from which an appeal can be taken" is analogous.

With the exception of the order on attorneys' fees, we do not consider any of the orders prior to the order of August 26, 1976, to be final orders. Section 25-1902, R. R. S. 1943, defines a final order as: "An order affecting a substantial right in an action, where such order in effect determines the action and prevents a judgment, and an order affecting a substantial right made in a special proceeding, or upon a summary application in an action after judgment, is a final order which may be vacated, modified or reversed, as provided in this chapter." An order is final when the substantial rights of the parties to the action are determined even though the cause is retained for the determination of matters incidental thereto. Dorshorst v. Dorshorst, 174 Neb. 886, 120 N. W. 2d 32 (1963). Here, however, the various claims of the parties, which were intermeshed, were tried in part at various times. Until the various claims were finally heard there was no determination of the substantial rights of the parties. All matters raised by the plaintiff except the matter of attorneys' fees on the partition are properly before us.

No useful purpose will be served by detailing the respective claims of the parties. The deceased died before the effective date of the new probate code. As we said in J. H. Melville Lumber Co. v. Maroney,

145 Neb. 374, 16 N. W. 2d 527 (1944): "Where an ancestor dies intestate his lands descend instantly to his heirs. It does not require settlement of his estate or a probate order declaring heirship to vest his title." And, "If the title passes to and vests in the heirs, the possessory right goes with it, *except to the extent it is placed by law in the administrator,* which is not exclusively or absolutely, but optionally with him, and for purposes indicated by statute and for none other." (Italics supplied.) We consider this case in the context of the agreement made by the administrators and the heirs.

The trial court was required to determine the exact nature of the agreement made by the parties as to the operation of the land farmed by Stewart. This was a fact question. The court found plaintiff occupied the common lands of the parties as a tenant and that a landlord and tenant relationship existed between the plaintiff and the defendants at all times germane to this cause.

The court further found the terms of the agreement between the parties were common in the neighborhood insofar as division of the crops and hay were concerned. Plaintiff, as tenant, was entitled to two-thirds of all wheat, corn, and hay produced, with the landlord's share of one-third to be shared equally by all four of the parties. The landlords were to pay one-third of the cost of all fertilizer, herbicides, and pesticides, and one-third of all costs of electricity for irrigation used on said crops. Pasture rent was $2.25 per acre for 1973, and $2.50 per acre for 1974. Plaintiff was to keep the fences, wells, and other improvements in repair.

After the agreement was made, Stewart planted crops at various times and abandoned them at various stages. He contended the agreement between the parties called upon all of them as landlords to advance working capital. The trial court found plaintiff failed to meet his burden of proof in this re-

spect. We cannot say he erred in doing so. We observe such agreement would not be the ordinary one.

Defendants denied there ever was any agreement to advance working capital. They testified the agreement made provided for plaintiff to draw any needed landlord expenses from the estate in which the parties were the sole heirs-at-law, in equal degree. The trial court also found that even if there had been an agreement as alleged by plaintiff to advance capital, plaintiff as one of the coowners was liable for one-fourth thereof as landlord, and at the very least he should have saved one-fourth of the crop. The court further noted that the plaintiff owed for pasture rent and could have used that amount as a setoff for any of the landlord's expenses he advanced.

Stewart attempted to show that it was not possible for him to borrow sufficient funds to continue the farm operations, and for that reason he abandoned the 1973 crop. The trial court observed it was hard for him to comprehend why plaintiff could not have borrowed on the strength of his sizeable inheritance; how he could have abandoned the 1973 crop but then replant in 1974; and how he could have let the entire crop go when by the simple expedient of drawing on the estate, of which he was a coadministrator, he could have saved it. The trial court further stated it seemed incredible to him that plaintiff ran out of capital the day of the hearing for the appointment of a receiver. It was on the basis of these findings the trial court determined plaintiff had deliberately abandoned the growing crops. The court held Stewart liable for abandoning the crops and permitted the cross-petitioners, the other three brothers, to recover three-fourths of the damages. We cannot say the trial court was in error in doing so.

The judgment is affirmed.

AFFIRMED.