85 P.3d 186

Henry SERION, Sr., Alice K. Serion, Edwina K. Llanes, and David Llanes, Plaintiffs–Appellees,

and

David Kuahiwinui, Pearl Kuahiwinui, Eddie Kuahiwinui, Jr., Stella Kuahiwinui, Nora K. Kahakua, James Kahakua, Mary Ann P.L. Tremaine, and Clayton D. Tremaine, Jr., Plaintiffs,

v.

John Pershing THORNTON, Defendant–Appellant.

No. 24165.

Intermediate Court of Appeals of Hawai'i.

Jan. 29, 2004.

John Pershing Thornton, on the briefs, defendant-appellant, pro se.

Edwina K. Llanes and Henry Serion, Sr., on the briefs, plaintiffs-appellees, pro se.

WATANABE, Acting C.J., LIM, and FOLEY, JJ.

Opinion of the Court by WATANABE, Acting C.J.

This appeal stems from a complaint filed by Plaintiffs–Appellees Henry Serion, Sr. (Henry), Alice K. Serion (Alice),[1] Edwina K. Llanes (Edwina), and David Llanes (David) [2] (collectively, Appellees), and several of their relatives [3] (Relatives) (Appellees and Relatives collectively, Original Plaintiffs) for redemption, partition, and quiet title of 7.58 acres of real property in Kona, Hawai'i (the Property).[4] The Property belonged to the Estate of John K. Aipia, also known as Joseph K. Aipia (Mr. Aipia), Deceased, and had been purchased by Defendant–Appellant John Pershing Thornton (Thornton) on December 5, 1995 at a tax foreclosure sale by the County of Hawai'i (County).

Pursuant to Findings of Fact, Conclusions of Law and Order entered on October 3, 2000 (the October 3, 2000 Order), the Circuit Court of the Third Circuit (the circuit court), Judge Ronald Ibarra (Judge Ibarra) presiding, directed Thornton "to redeem the property" to Appellees. Thereafter, on February 15, 2001, the circuit court entered Final .Judgment in favor of Appellees and dismissed "[a]ll other claims and all other parties[.]"

---

1. Henry Serion, Sr. is the husband of Alice K. Serion (Alice).

2. David Llanes is the husband of Edwina K. Llanes (Edwina).

3. These relatives were: David Kuahiwinui, Pearl Kuahiwinui, Eddie Kuahiwinui, Jr., Stella Kuahi-winui, Nora K. Kahakua, James Kahakua, Mary Ann P.L. Tremaine, and Clayton D. Tremaine, Jr.

4. The 7.58 acres of real property at issue in this lawsuit (the Property) is referred to as Tax Map Key No. (3)7–3–002–016 and as "Lot 7, Reg. Map No. 2431, Third Land District, situate at Haleo-hiu, District of North Kona, Island, County and State of Hawaii."

Thornton argues on appeal that: (1) the circuit court erred in finding that Appellees were "taxpayers" entitled to redeem the Property; and (2) Original Plaintiffs, by tendering only *copies* of checks for the redemption amount and stating that the actual checks would be delivered upon Thornton's execution of a proposed redemption deed conveying the Property to them, did not comply with the requirements necessary to redeem the Property within the one-year redemption period allowed by County ordinance.

We conclude that at least two of the Appellees were entitled to redeem the Property. However, the record indicates that the circuit court did not determine whether a proper tender of the redemption amount had occurred or how redemption was to be effectuated if proper tender were made. Accordingly, we affirm the Final Judgment in part, vacate the Final Judgment in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

The Property at issue was originally granted to Mr. Aipia,[5] pursuant to a land patent dated February 15, 1915. Mr. Aipia died intestate on January 12, 1920, and his widow died on February 5, 1930.

Mr. Aipia's estate was never administered, and no proceeding was ever initiated to determine his heirs. *Klinger v. Kepano*, 64 Haw. 4, 635 P.2d 938 (1981). However, various of Mr. Aipia's issue continued to live on or use the Property after Mr. Aipia's death. *Id.* at 6, 635 P.2d at 940. Additionally, various descendants of Mr. Aipia paid all real property taxes assessed on the "John C. Aipia Estate" for the period from Mr. Aipia's death until 1958. *Id.* at 6–7, 635 P.2d at 940.

On October 15, 1962, after delinquent taxes assessed on the Property had accrued for the years 1960 and 1961, the State Department of Taxation (the State) issued a notice of the proposed sale of thirty-one properties, including the Property, for failure to pay property taxes. *Id.* at 7, 635 P.2d at 940. Although notice of the tax sale was published on four successive occasions in the *Hawaii Tribune–Herald,* "a newspaper with a general circulation primarily restricted to the Island of Hawai'i[,]" and notice was also posted on the Property, *id.* at 7, 635 P.2d at 940–41, no "notice was mailed or otherwise made personally known to any one of the issue of [Mr. Aipia], including Mary Ann Lindsey (Mary Ann) and Joseph S. Aipia, the persons whose names and addresses were listed on the tax records [of the County] as living persons to whom assessments could be directed." *Id.* at 7, 635 P.2d at 941.

Sidney Kazumi Kaide and Terry Teruko Kaide (the Kaides) were the highest bidders for the Property at the November 16, 1962 tax sale, and a tax deed to them, as tenants by the entirety, was recorded on January 14, 1963. *Id.* Between August 6, 1963 and November 17, 1971, quitclaim deeds by several of Mr. Aipia's heirs, conveying their respective interests in the Property to the Kaides, were recorded. Additionally, judgments in favor of the Kaides on actions against various individuals to quiet title to the Property were recorded.

By a warranty deed dated November 4, 1971 and recorded on November 17, 1971, the Kaides conveyed the Property to Hazel Yonekura Klinger (Hazel). By a Quitclaim Deed dated July 11, 1975 and recorded on July 23, 1975, Hazel conveyed one-half interest in the Property to her husband, Walter

5. A Status Title Report introduced into evidence during the proceedings below indicates that the land patent for the Property was originally granted to John K. Aipia on February 15, 1915 and that John K. Aipia was also known as "Joseph K. Aipia." In *Klinger v. Kepano*, 64 Haw. 4, 635 P.2d 938 (1981), which involved the right to possession of the same Property at issue in this case, the Hawai'i Supreme Court explained that: (1) the original patentee of the Property was "John S. Aipia"; (2) since John S. Aipia's death, "the owner of the land has been listed on the tax records ... as 'Estate of John C. Aipia[,]' " *id.* at 6, 635 P.2d at 940; and (3) the defendants-appellants in that lawsuit "maintain that John S. Aipia and John C. Aipia are one and the same[.]" *Id.* at 6 n. 2, 635 P.2d at 940 n. 2. It is unclear to us whether the Status Title Report introduced into evidence in this case mistakenly referred to the original patentee as "John K. Aipia" or whether the reference to "John S. Aipia" in *Klinger* was incorrect. We assume, for purposes of this appeal, that John K. Aipia, John S. Aipia, and John C. Aipia are one and the same.

H. Klinger (Walter) [6] (Hazel and Walter collectively, the Klingers).

In August 1974, the Klingers, who resided in Ohio, visited the Property for the first time and learned that Mr. Aipia's grandson and others were occupying the Property. *Id.* at 8, 635 P.2d at 941. On August 22, 1975, the Klingers filed an ejectment action to recover possession of the Property. *Id.* They subsequently filed a motion for summary judgment, claiming that they had good title to the Property because the November 16, 1962 tax sale to the Kaides had been conducted in full compliance with statutory requirements. *Id.* The circuit court entered judgment in favor of the Klingers, but on appeal, the judgment was reversed. *Id.* at 5, 635 P.2d at 940–41. The Hawai'i Supreme Court concluded that the tax deed to the Kaides was invalid because the notice provided by the State of the proposed tax lien foreclosure sale failed to meet minimum standards of due process under the Fourteenth Amendment of the United States Constitution and article I, section 4 of the Hawai'i Constitution. *Id.* at 16, 635 P.2d at 946.

Pursuant to an amendment to the Hawai'i Constitution in 1978, the functions, powers and duties relating to the taxation of real property was transferred to the various counties. Haw. Const. art. VIII, § 3. For reasons that are unclear, although the County's records indicated that the present owners of the Property were the Hazel Y. Klinger Trust, Walter, the Estate of John C. Aipia, and Mary Ann,[7] the County continued to assess only the Klingers for taxes on the Property. On September 14, 1995, the Real Property Tax Collection Section of the County Department of Finance sent a registered letter to Edwina,[8] c/o Eddie Kuahiwinui Sr., informing Edwina, in relevant part, as follows:

> Please be advised that delinquent real property taxes are owed to the [County] for the [Property]. The total amount owed for each of the respective years, including penalty and interest and title search cost, is listed on the enclosed statement.

> We have commenced foreclosure proceedings to collect the delinquent taxes.

> This is a preliminary notice that you have fifteen (15) days, from the date listed above, to pay the amount shown on this statement. Payment is due by September 29, 1995.

> PAYMENTS MUST BE MADE BY CASHIER'S CHECK, TRAVELER'S CHECK, MONEY ORDER, CERTIFIED CHECK, OR CASH. CHECKS SHOULD BE MADE PAYABLE TO THE COUNTY DIRECTOR OF FINANCE.

> We hope that your payment is forthcoming to avoid additional and unnecessary costs.

The statement attached to the foregoing letter indicated that the amount owed to the County for real property taxes assessed on the Property for the years 1983 through 1996 totaled $23,676.92.

On November 7, 14, 21, and 28 of 1995, the County published a Notice of Non–Judicial Foreclosure Sale of the Property in the *Hawaii Tribune–Herald.* The names of many of Mr. Aipia's descendants, including Alice, Edwina, and five other Original Plaintiffs, were identified in the notice as present and/or potential owners or claimants of the Property.

---

6. According to the Status Title Report admitted into evidence during the proceedings below, Walter H. Klinger died on June 6, 1988. The Status Title Report also indicates that by a Quitclaim Deed dated February 2, 1994 and recorded on February 14, 1994, "Hazel Yonekura Klinger, unmarried, quitclaimed all of her right, title and interest in [the Property] to Hazel H.Y. Klinger, Trustee under that certain unrecorded Revocable Trust of Hazel H.Y. Klinger dated March 23, 1989[.]"

7. According to a Status Title Report ordered by the County of Hawai'i (the County) and dated July 18, 1995, Mary Ann Lindsey was a deceased granddaughter of John K. Aipia, also known as Joseph K. Aipia (Mr. Aipia).

8. The letter was addressed to "Kuahiwinui, Edwina, c/o Eddie Kuahiwinui Sr[.]" It appears from the record on appeal that Edwina Kuahiwinui is also known as Edwina K. Llanes, one of the Plaintiffs–Appellees (Appellees) in this action. The record does not include copies of similar letters that the County may have sent to other individuals identified in a Title Status Report ordered by the County as having an interest in the Property.

At the December 5, 1995 foreclosure auction, Thornton was the highest bidder for the Property, with a bid of $45,000.00. On January 10, 1996, the County Director of Finance executed a tax deed, conveying the Property to Thornton "SUBJECT, HOWEVER, to the right of redemption provided by law."

On December 3, 1996, one day before the one-year redemption period specified by Hawaii County Code (HCC) § 19–42 was due to expire, Stanley H. Roehrig (Roehrig), a lawyer representing Original Plaintiffs, wrote a letter that was delivered to Thornton by courier that day, stating that Original Plaintiffs "tender the amount of $53,089.66 to [Thornton] in full payment of redemption on the [Property.]" Attached as Exhibit A to the letter were copies of cashier's checks for the tendered amount that Roehrig claimed he was holding in his office's safe. Attached as Exhibit B to the letter was a "proposed form Redemption Deed for [Thornton's] signature for redemption of the [Property]." Under the proposed redemption deed, Thornton would have conveyed the Property to Original Plaintiffs in the following shares:

1. ONE–SEVENTH (1/7) to JAMES KAHAKUA and NORA KAHAKUA, husband and wife, ... to be held ... as tenants by the entirety, and which share is to be held as tenants in common with the other owners;

2. TWO–SEVENTHS (2/7) to DAVID LLANES and EDWINA LLANES, husband and wife, ... to be held ... as tenants by the entirety, and which share is to be held as tenants in common with the other owners;

3. ONE–SEVENTH (1/7) to EDDIE KUAHIWINUI and STELLA KUAHIWINUI, husband and wife, ... to be held ... as tenants by the entirety, and which share is to be held as tenants in common with the other owners;

4. ONE–SEVENTH (1/7) to DAVID KUAHIWINUI and PEARL KUAHIWINUI, husband and wife, ... to be held ... as tenants by the entirety, and which share is to be held as tenants in common with the other owners;

5. ONE–SEVENTH (1/7) to CLAYTON TREMAINE and MARY ANN TREMAINE, husband and wife, ... to be held ... as tenants by the entirety, and which share is to be held as tenants in common with the other owners; and

6. ONE–SEVENTH (1/7) to HENRY SERION, SR. and ALICE SERION, husband and wife, ... to be held ... as tenants by the entirety, and which share is to be held as tenants in common with the other owners.

Thornton testified that after receiving the letter, he spoke on the telephone with Roehrig, who indicated that he would send his secretary over immediately with the actual checks if Thornton would sign the deed. Thornton refused this offer, stating that he would not sign the deed because he felt that Original Plaintiffs were not the only ones entitled to redemption and that he could potentially be liable to the Klingers or other possible part-owners of the Property if he signed a deed. Thornton, who was familiar with redemption, testified at trial that he was confused by Roehrig's attempt to get him to sign a deed that would have apparently given Original Plaintiffs a greater portion of ownership of the Property than they had before the tax sale.

On April 2, 1997, Original Plaintiffs filed the complaint underlying this appeal seeking:

1. That [Original] Plaintiffs be provided redemption, partition, quiet title to the [Property].

2. That [Original] Plaintiffs be provided a writ of possession placing them in the possession of the premises.

3. That [Original] Plaintiffs be provided attorney fees and costs as provided in Chapter 668, Hawaii Revised Statutes as amended.

4. Decreeing all other rights to which [Original] Plaintiffs are entitled and providing to [Original] Plaintiffs such other and further relief in the [Property] as may be just and equitable.

After a short trial in January 2000 resulted in a hung jury, the parties agreed to have Judge Ibarra determine the issues of fact and law based on the trial transcripts. At around this time, all Original Plaintiffs, except Appellees, voluntarily withdrew from

the case or were dismissed for lack of prosecution. On October 3, 2000, Judge Ibarra issued the October 3, 2000 Order that directed Thornton to redeem the Property to Appellees. The circuit court did not rule on Appellees' requests for quieting title, partition, or attorney's fees.

On November 1, 2000, Thornton filed a notice of appeal from the October 3, 2000 Order. On February 8, 2001, the Hawai'i Supreme Court dismissed the appeal because the October 3, 2000 Order had disposed of only some of Appellees' claims and had not been reduced to a separate and final judgment, as required by Rule 58 of the Hawai'i Rules of Civil Procedure.

On February 15, 2001, the circuit court referred to its October 3, 2000 Order and then entered a Final Judgment in favor of Appellees. This Final Judgment expressly stated that, "[a]ll other claims and all other parties are dismissed." [9]

Thornton filed a timely notice of appeal from the Final Judgment on March 19, 2001.[10]

## DISCUSSION

### A. *Whether Appellees Were Entitled to Redeem the Property*

As a general rule,

tax statutes do not make the tax sale itself a final and irrevocable divestiture of the owner's title; rather, the statutes provide an opportunity, by means of redemption, whereby the former owner and certain others may, notwithstanding that the proceedings upon the tax sale are valid and regular in every respect, defeat the sale and become revested with title as complete and as unqualified as he or she had before the tax was assessed, by repaying the amount which the purchaser paid for the property with interest and costs....

72 Am.Jur.2d *State and Local Taxation* § 898 (2001) (footnotes omitted).

In the case of the County, the general ordinances governing real property taxes are included in HCC chapter 19. Pursuant to HCC § 19–37, "[e]very tax due upon real property, as defined by section 19–2, shall be a paramount lien upon the property assessed, which lien shall attach as of July 1 in each tax year and shall continue for six years." In the event that taxes assessed on real property are not paid, the County has the option of foreclosing on the tax lien by selling the real property and issuing a tax sale deed to the highest bidder. HCC §§ 19–37 and 19–38. However, pursuant to HCC § 19–42, property sold at a tax sale may be redeemed within one year from the date of the sale:

**Same; tax deed; redemption.**

The director [of finance] or the director's subordinate shall, on payment of the purchase price, make, execute, and deliver all proper conveyances necessary in the premises and the delivery of the conveyances shall vest in the purchaser the title in fee thereto, and such title shall be free and clear of any lien, claim, or encumbrance against such property except the lien for real property taxes subsequent to that for which the property was sold, subject only to any mineral rights of the State and any easements in favor of any governmental entity; *provided, that the taxpayer may redeem the property sold by payment to the purchaser at the sale, within one year from the date of the sale, of the amount paid by the purchaser, together with all costs and expenses which the purchaser was required to pay, including the fee for recording the deed, and in addition thereto, interest on such amount at the rate of twelve percent a year.*

(Emphasis added.)

Thornton claims on appeal that he properly refused tender of redemption payment from the Appellees because under HCC § 19–42, only a "taxpayer may redeem the property" and "[t]he Klingers are the only true taxpayers entitled to redeem which they declined to do." Thornton argues that "[A]p-

---

9. It appears from the record that Judge Ronald Ibarra *sua sponte* dismissed the remaining claims of Appellees (for quieting title, partition, and attorney's fees). Appellees have not appealed the dismissal of these claims.

10. The thirtieth day following the entry of the judgment was March 17, 2001, which was a Saturday.

pellees have never been assessed for nor paid this [P]roperty's taxes. They have no title of record which makes them merely claimants through the deceased [Mr. Aipia] alleging inheritance or otherwise." Therefore, Thornton maintains, Appellees are not entitled to redeem the Property.

We disagree with Thornton in part. Although the HCC does not define who qualifies as a "taxpayer" entitled to redeem property from a tax sale, we conclude, based on the context within which the term is used in the HCC, as well as general case law, that at least two Appellees qualified as "taxpayers" entitled to redeem the Property at issue in this case.

### 1.

HCC chapter 19 establishes two different procedures by which the County can sell real property subject to a tax lien: a judicial foreclosure process, set forth in HCC § 19–37[11]; and a summary, non-judicial foreclosure procedure, set forth in HCC § 19–38, the process that was utilized in this case:

All real property on which a lien for taxes exists may be sold by way of foreclosure without suit by the director [of finance], and in case any lien, or any part thereof, has existed thereon for three years, shall be sold by the director at public auction to the highest bidder, for cash, to satisfy the lien, together with all interest, penalties, costs, and expenses due or incurred on account of the tax, lien, and sale, the surplus, if any, to be rendered to the person thereto entitled. The sale shall be held at any public place proper for sales on execution, after notice published at least once a week for at least four successive weeks immediately prior thereto in any newspaper with a general circulation of at least sixty thousand published in the State and any newspaper of general circulation published and distributed in the County. If the address of the *owner* is known or can be ascertained by due diligence, including an abstract of title or title search, the director shall send to each *owner* notice of the proposed sale by registered mail, with request for return receipt. If the address of the *owner* is unknown, the director shall send a notice to the *owner* at his [or her] last known address as shown on the records of the department of finance. The notice shall be deposited in the mail at least forty-five days prior to the date set for the sale. The notice shall also be posted for a like period in at least three conspicuous public places within the County and if the land is improved, one of the three postings shall be on the land.

(Emphases added.)

█ Both tax foreclosure procedures provide, consistent with *Klinger v. Kepano*, 64 Haw. at 4, 635 P.2d at 939, that notice of an impending tax sale must be provided to each "owner" of the property being foreclosed. The term "owner" is defined in HCC § 1-4 as follows:

"Owner" means one who has complete dominion over particular property and *the one in whom legal or equitable title rests;* when applied to a building or land, "owner" means any *part owner,* joint owner, owner of a community or partnership interest, life tenant, tenant in common, or joint tenant, of the whole or part of such building or land.

(Emphases added.) Furthermore, pursuant to HCC § 19-40, the notice provided to "owners" of property subject to an impend-

---

**11.** Hawaii County Code § 19–37 provides, in relevant part, that real property tax

liens may be enforced by action of the director [of finance] in the circuit court of the third circuit, and the proceedings had before the circuit court shall be conducted in the same manner and form as ordinary foreclosure proceedings as provided for in chapter 634, [Hawaii Revised Statutes (HRS)]. If the *owners* or claimants of the property against which a lien is sought to be foreclosed are at the time out of the County or cannot be served within the County, or if the *owners* are unknown, and the fact shall be made to appear by affidavit to the satisfaction of the court, and it shall in like manner appear prima facie that a cause of action exists against such *owners* or claimants or against the property described in the complaint, or that such *owners* or claimants are necessary or proper parties to the action, the director may request the court that service be made in the manner provided by sections 634–23 to 634–29, HRS.

(Emphases added.)

ing tax sale foreclosure must meet the following requirements:

> The notice of sale shall contain the names of the persons assessed, *the names of the present owners (so far as shown by the records of the director [of finance] and the records, if any, in the office of the assistant registrar of the land court)* the character and amount of the tax, and the tax year or years, with interest, penalties, costs, expenses, and charges accrued or to accrue to the date appointed for the sale, a brief description of the property to be sold, and the time and place of sale, *and shall warn* the persons assessed, and *all persons having or claiming to have* any mortgage or other lien thereon or *any legal or equitable right, title, or other interest in the property, that unless the tax, with all interest, penalties, costs, expenses, and charges accrued to the date of payment, is paid before the time of sale appointed, the property advertised for sale will be sold as advertised.* The director may include in one advertisement of notice of sale notice of foreclosure upon more than one parcel of real property, whether or not owned by the same person and whether or not the liens are for the same tax year or years.

(Emphases added.)

 In other words, prior to selling property at a tax foreclosure sale, the County must notify present owners of the property and any person who may claim any legal or equitable right, title, or other interest in the property that the property will be sold unless delinquent taxes on the property are paid before the designated time of the sale. Since the property will be redeemable only if those notified of the sale have not paid the taxes owed, it is logical to conclude that all those who are entitled to receive notice of the tax sale are "taxpayers" entitled to redeem the property from the sale.

### 2.

 We note in this regard that tax sale foreclosures are *in rem* proceedings that are based on jurisdiction over the property involved, rather than jurisdiction over the taxpayer. Richard R. Powell, 5 *Powell on Real Property* § 39.04[4] at 39-51 (2000). Since a properly conducted tax sale "is binding on all parties with a legal or equitable interest in the property as well as all parties with notice of the proceedings which notice may arise constructively as a result of the requisite published notices[,]" *id.* at 39-51 to 39-52, it is well-settled that

> [a]ny person with a substantial interest affected by the tax sale has the right to redeem. Eligible parties include the party assessed for the tax; the record owner; the successor in interest through transfers to heirs, devisees, and purchasers; an occupant of the property including an adverse possessor; and any parties with liens in the property, such as mortgagees and judgment creditors.

*Id.* at 39-60 to 39-61. *See also* 72 Am.Jur.2d *State and Local Taxation* § 909, at 307 (2001) (stating that "[t]he right or privilege of redemption from a tax sale is granted to and may be exercised by the former owner of the forfeited land, the former owner's successors in interest, or any other person who has a legal or equitable interest in the land.").

### 3.

Moreover, the Hawai'i Supreme Court has instructed that tax sale redemption statutes "should be liberally construed in the taxpayer's favor because it is the policy of this State to give the taxpayer every reasonable opportunity to redeem his [or her] property[.]" *Hawaiian Ocean View Estates v. Yates*, 58 Haw. 53, 58-59, 564 P.2d 436, 440 (1977) (citation omitted).

> [T]he underlying rationale for liberal construction of [a redemption statute] is to provide delinquent taxpayers relief from "governmental seizure and sale of land which is one of the most potent weapons in the government's tax collection arsenal." For "the consequences of seizure and sale are often staggering and irreversible; this action not only deprives a taxpayer of a sometimes significant capital investment but also denies him or her a source of additional income."

*In re W.H. Shipman, Ltd.*, 84 Hawai'i 360, 368, 934 P.2d 1, 9 (App.1997) (internal brackets and citation omitted).

In *Shipman*, this court was called upon to decide whether the owner of property sold by the Internal Revenue Service at a tax sale had validly redeemed the property within the statutory redemption period. The redemption amount had been tendered on the owner's behalf by the owner's accountant, whose family owned shares in a company that had submitted an unsuccessful bid for the property at the tax sale and had subsequently entered into an agreement with the owner to provide her the redemption amount, in exchange for her conveying the property to them and taking a fifty percent profit in the company's gain from the property.

In concluding that the redemption was valid, we noted that other courts have applied "the rule of liberal construction . . . to extend redemption rights to the beneficial owner of an interest in land." *Id.* at 367, 934 P.2d at 8. We held that the accountant, whose family had a beneficial interest in the land, had acted as the owner's agent in redeeming the property and that "it [was] immaterial in determining whether property was redeemed . . . that the funds for the redemption of property came from a party interested in acquiring the property from the owner[.]" *Id.* at 372, 934 P.2d at 13.

4.

█ In this case, the circuit court concluded, based upon the County's title search, that

Appellees "were on title as some of the owners [of Property] at the time of the foreclosure" and "had a right to redeem the [P]roperty pursuant to [HCC] § 19–42."

█ Our review of the record confirms that Edwina and Alice were identified as heirs of Mr. Aipia in the Status Title Report issued to the County in conjunction with the tax sale. Edwina and Alice were also identified as "PRESENT AND/OR POTENTIAL OWNERS OR CLAIMANTS ACCORDING TO RECORDS MAINTAINED BY THE REAL PROPERTY TAX OFFICE AND THE BUREAU OF CONVEYANCES" in the Notice of Non–Judicial Foreclosure Sale of the Property that was published in the *Hawaii Tribune–Herald* by the County. As heirs of Mr. Aipia's estate, Edwina and Alice clearly have partial ownership of the Property and are entitled to redeem it.[12] Other jurisdictions concur that the right of redemption is a statutory privilege that passes to heirs of an owner of property in the same manner as the land itself. *Carter v. Klein*, 243 Miss. 627, 139 So.2d 629, 631 (1962); *Belmore v. State Tax Comm'n*, 56 N.M. 436, 245 P.2d 149, 153–54 (1952); *McGuire v. Bond*, 271 S.W.2d 508, 511 (Tex.Civ.App. 1954).

█ On the other hand, David and Henry, as spouses of Edwina and Alice, respectively,

---

12. We note that HRS § 560:3–901 (Supp.2002) currently states:

**Successors' rights if no administration.** *In the absence of administration, the heirs and devisees are entitled to the estate in accordance with* the terms of a probated will or *the laws of intestate succession.* Devisees may establish title by the probated will to devised property. Persons entitled to property by homestead allowance, exemption or intestacy may establish title thereto by proof of the decedent's ownership, decedent's death, and their relationship to the decedent. Successors take subject to all charges incident to administration, including the claims of creditors and allowances of surviving spouse or reciprocal beneficiary and dependent children, and subject to the rights of others resulting from abatement, retainer, advancement, and ademption.

(Emphases added.) HRS § 560:3–101 (Supp. 2002) similarly provides, in relevant part:

**Devolution of estate at death; restrictions.** . . . Upon the death of a person, the decedent's real and personal property devolves . . . in the

absence of testamentary disposition, to the decedent's heirs, or to those indicated as substitutes for them in cases involving renunciation or other circumstances affecting devolution of intestate estates, subject to homestead allowance, exempt property and family allowance, to rights of creditors, elective share of the surviving spouse, and to administration.

The foregoing statutes, while not in effect at the time of Mr. Aipia's death, codifies the common law understanding that heirs take property at the time the intestate decedent dies. *See Noss v. Hagen*, 274 N.W.2d 228 (N.D.1979); *Evans v. Evans*, 199 Neb. 480, 486–87, 260 N.W.2d 188, 192 (1977); *Wood v. Wood*, 23 N.C.App. 352, 355, 208 S.E.2d 705, 707 (1974).

While it might be less problematic for Alice, Edwina, and other of Mr. Aipia's kin if they were to bring a separate action to determine who owns what portion of the Property, such an action is not necessary in order to give them the right to redeem in this instance. The Circuit Court of the Third Circuit was apparently satisfied that Appellees own *some* portion of the Property. That is enough for redemption purposes.

do not appear to be "owners" of the Property entitled to redeem the Property. It is possible that they have a beneficial interest in the Property that would give them a right to redeem the Property. However, such a determination was not made by the circuit court. On remand, the circuit court is instructed to clarify whether David and Henry are entitled to redeem the Property.

### B. Whether Appellees Properly Redeemed the Property

In ordering Thornton to redeem the Property to Appellees, the circuit court entered the following conclusions of law:

> 5. [Appellees] complied with the statutory time limit pursuant to [HCC § ] 19–42 by having their attorney Stanley Roehrig, Esq. send a letter dated December 3, 1996 to [Thornton].

> 6. [Appellees] complied with [HCC §] 19–42 by including checks totaling $53,089.66 in their December 3, 1996 letter. This amount covered the $45,000.00 purchase price, plus 12% interest and additional monies to cover costs and expenses.

It appears to be undisputed, however, that Roehrig did not include with his December 3, 1996 letter to Thornton the cashier's checks from Original Plaintiffs totaling $53,089.66. Instead, Roehrig included only *copies* of the cashier's checks to redeem the Property.[13] Additionally, Roehrig offered to tender the actual checks only if Thornton signed the redemption deed Roehrig had prepared, pursuant to which Thornton would convey the Property to Original Plaintiffs.

### 1.

■ The HCC does not specify the required medium for a tender of tax redemption payment. However, as noted above, redemption statutes are to be liberally construed in order to give defaulting taxpayers every opportunity to redeem. In this case, since we are required to liberally construe redemption statutes in favor of redemption, we decline to hold that payment of the required redemption amount by cashier's checks was improper.

### 2.

■ It is a general rule that a conditional tender of the redemption amount is ineffective to redeem property. *See City of Newark v. Block 86, Lot 30,* 94 N.J.Super. 468, 228 A.2d 877, 882 (1967) (observing that "[t]he general rule is that where a tender is made upon condition that the creditor do something that he is not bound to do, the tender is invalid"); *Fields v. Danehower,* 65 Ark. 392, 46 S.W. 938, 942 (1898) (holding invalid a tender of the amount necessary to redeem property under a statute, where the tender was conditioned on mortgagee's waiver of a mortgage lien on the property).

Applying this general rule, the Supreme Court of Michigan held that placement of redemption money in escrow with a title insurance company on the final day of redemption, pending presentment of a deed, did not constitute a proper redemption. *Flynn v. Korneffel,* 451 Mich. 186, 547 N.W.2d 249, 249–50 (1996). Similarly, the Supreme Court of New Mexico held invalid a tender of a redemption amount that was conditioned upon the execution of an instrument concerning title. *Nutter v. Occidental Life Ins. Co.,* 26 N.M. 140, 189 P. 882, 884 (1920).

■ In this case, Original Plaintiffs argued below that the proposed redemption deed attached as an exhibit to Roehrig's December 3, 1996 letter to Thornton was "nothing more than a proposal. [Thornton] was free to use it or to not use it." Although the circuit court entered judgment in Appellees' favor and held that Appellees were entitled to redeem the Property that had been sold to Thornton, the circuit court did not determine whether Appellees' redemption was invalidly conditioned upon Thornton's execution of a deed conveying title to the Property to Original Plaintiffs.

The circuit court is instructed to make this determination on remand.

---

**13.** Neither copies of the checks, nor the checks themselves, were made part of the record on appeal.

## C. *How Redemption is Effectuated*

The circuit court did not determine how redemption of the Property was to be effectuated. The effect of redemption is to "restore[ ] the owner to his or her title as it stood before the sale." *Shipman,* 84 Hawai'i at 373, 934 P.2d at 14 (internal brackets and quotation marks omitted). In this case, the Status Title Report ordered by the County indicated that on July 18, 1995, at 8 a.m., "[t]he estate or interest in the [Property] . . . [was] . . . vested in: THE ESTATE OF JOHN K. AIPIA also known as JOSEPH K. AIPIA Deceased[.]" Therefore, assuming that proper redemption was made in this case, title to the Property would revert to the Estate of John K. Aipia. If any Appellees are entitled to redeem the Property that had been sold to Thornton, they would not be entitled to a new deed, giving them a greater interest in the Property than they had when the tax sale occurred.

We note that HCC chapter 19 is rather vague in describing how redemption is to be effectuated. It also appears from the record that the County has left the details of redemption to be worked out between the redeeming taxpayers and the purchaser at the tax sale. Since a tax sale deed is conveyed by the County, subject to the right of redemption, and the effect of redemption is to return title to the property sold at tax sale to its status prior to the tax sale, it may be preferable for redemption to be effectuated by the County's issuance of a certificate of redemption to the redeeming taxpayers and the County's cancellation of the tax deed to the purchaser at the tax sale, which instruments can then be recorded.[14]

### CONCLUSION

In light of the foregoing discussion, we vacate the Final Judgment of the circuit court, except to the extent that it determined that Edwina and Alice were entitled to redeem the Property. We remand this case to the circuit court for further proceedings consistent with this opinion.

---

14. It appears that in most states, a purchaser at a tax sale is not entitled to a conveyance of property by a tax deed until the redemption period has expired. Instead, a purchaser of property at a tax sale receives a certificate of sale, which can be exchanged for a tax deed at the end of the redemption period. *See* Richard R. Powell, 5 *Powell on Real Property* §§ 39.04[4][g] and 39.04[5] at 39–58 to 39–59 (2000).